**In re the MARRIAGE OF Denise Marie DUNKERSON and James Howard Dunkerson.**

**Upon the Petition of Denise Marie Dunkerson, Appellee,**

**And Concerning James Howard Dunkerson, Appellant.**

**No. 91–1095.**

Court of Appeals of Iowa.

March 24, 1992.

David L. Jungmann, Greenfield, for appellant.

John E. Wietzke, Greenfield, for appellee.

Heard by OXBERGER, C.J., and HAYDEN and HABHAB, JJ.

OXBERGER, Chief Judge.

Denise and James Dunkerson were married in 1983. They had four children: girls born in 1983, 1984, and 1985, and a boy born in 1988. In 1984, James enlisted in the U.S. Army. He has remained in the army and plans to make the service his career. Denise has little employment experience and was the children's primary caretaker while the parties lived together.

In 1989 the army transferred James to Germany, where he remained stationed at the time of trial. Denise and the children did not accompany him to Germany. In 1990 Denise filed a petition to dissolve the marriage. The marriage was dissolved on June 17, 1991. The dissolution decree placed the children in joint legal custody with Denise having primary physical care.

James has appealed from the dissolution decree. He challenges primarily the decree's custody provisions. He contends the children should be placed in his sole legal custody, or alternatively should be left in joint legal custody but transferred to his physical care. He accuses Denise of neglecting the children's needs and of being

unable to cope with the responsibilities of caring for the children as a single parent. He asserts that he is able to assume the children's care in spite of the uncertainties of his military career.

James contends the district court erred by requiring him to pay court costs, to contribute toward Denise's trial attorney's fees, and the fees of the attorney appointed to represent the children. He does not challenge other economic provisions of the decree.

■ *Scope of Review:* Our review in this matter is de novo. Iowa R.App.P. 4. In child custody cases, the best interests of the child is the first and governing consideration. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3) and in *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). All factors bear on the "first and governing consideration," the court's determination of what will be in the long-term best interests of the child. *In re Marriage of Vrban*, 359 N.W.2d 420, 424 (Iowa 1984). The critical issue in determining the best interests of the child is which parent will do better in raising the child; gender is irrelevant and neither parent should have a greater burden than the other in attempting to gain custody in a dissolution proceeding. *In re Marriage of Ullerich*, 367 N.W.2d 297, 299 (Iowa App.1985).

■ *Primary Physical Care, Custody and Control:* We first consider whether the trial court erred in awarding the primary physical care, custody and control of the four minor children to Denise. James asserts it appears the court had determined how it was going to rule and then found facts to support that ruling. We reject this assertion and affirm the trial court.

James admits the basic problem is he has been stationed with the Army in Germany since August, 1989. He argues, however, the court's position that his army career affected his suitability as a custodian for the children is nothing more than a rephrasing of the tender years presumption.

Much of James's argument, however, stresses the high qualifications of his sister, Khristy Wambold, to care for the children. We find the trial court's concern for James's career choice was not concerned with the age of the children or any presumption underlying a tender years doctrine. We consider whether a parent is available for the care of his or her children a valid inquiry when determining the best interests of the children. It is not clear from the record to what extent James would be available in the future to directly care for the children. The trial court considered the availability of each parent to care for the children. The court noted:

Respondent's future after his current tour is complete has so many variables which bear upon his availability to care for the children; and the effect which his relationship with his girlfriend may have upon him returning to the United States does make the prospect of him performing the day to day physical care of the children questionable, so that the Court must base its decision upon the past and present situation of each parent rather than speculate as to what the future might hold for either.

In comparison, the trial court found, and we agree, that Denise has in the past and can in the future provide for the children, including supervision by the Arkansas Department of Human Services which has indicated its willingness to become involved and assist. We find abundant evidence in the record that Denise faced difficult financial and emotional challenges while attempting to parent four children in her husband's absence.

The trial court stated:

Glen Major, Iowa DHS worker, probably best summarized Petitioner's problems when he said she was dumped in Iowa without enough money, without clothes or furniture to try to put a family of four children into some type of organized family environment....

Although we do not accept the notion this mother was "dumped" in Iowa, we find under the difficult circumstances this mother faced, the conclusions of the trial court

are correct. In addition, it is clear James intends to rely upon the assistance of his sister for the care of the children. The trial court noted James's sister, Khristy, has had problems in the past concerning visitation and allowing Denise access to the children. We find the trial court's concern is justified that placing physical custody with James and the resulting care by Khristy would not foster meaningful contact with Denise. We affirm the trial court's award of primary physical care and custody to Denise.

█ *Sole Custody:* James next asserts the court erred in failing to award sole custody of the children to him, subject to the supervised visitation with Denise.

The trial court, in the present case, determined James had failed to overcome the legal preference for joint legal custody. We agree. Because our object is to make a custody award which will assure the child opportunity for maximum continuing physical and emotional contact with both parents after dissolution, joint custody is favored whenever reasonable and in the child's best interest. *See In re Marriage of Ullerich,* 367 N.W.2d 297, 299 (Iowa Ct.App.1985). Iowa Code section 598.41(2) provides in part:

> If the court does not grant joint custody under this subsection, the court shall cite clear and convincing evidence, pursuant to the factors in subsection 3, that joint custody is unreasonable and not in the best interests of the child to the extent that the legal custodial relationship between the child and a parent should be severed.

We find nothing in the record which rises to the level of clear and convincing evidence that joint custody is unreasonable or not in the best interests of the children. We therefore affirm the trial court on this issue.

█ *Attorney's Fees:* We consider next whether the trial court erred in taxing a portion of Denise's attorney fees to James. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial posi-

tions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App. 1981).

█ At the time of trial Denise worked for minimum wage. She earned approximately $5,300 in 1990. James's earnings were approximately $1,440 per month. In light of the disparity of incomes between the parties, we find the court did not abuse its discretion in awarding attorney's fees. In addition, the trial court found Denise's actions were the direct result of James's efforts to mislead her in a "sham divorce." The court stated:

> Petitioner's actions were the direct result of Respondent's efforts to either defraud the U.S. Army with a "sham" divorce and custody order, or mislead Petitioner into signing documents to be filed in Court in which she gave up physical care of the children. The end result was an attempt by the Respondent to use this court and the authority of this court for improper and fraudulent purposes.

James admits he lied to Denise in an attempt to get the children out of her custody. Under these circumstances, we find the trial court was justified in assessing James attorney's fees where his representations created additional and unnecessary increases in attorney services.

Denise has been required to defend herself on appeal. There is no indication her financial condition has changed. We therefore direct James to pay $1,000 of Denise's attorney's fees for appeal. Costs are taxed to James.

AFFIRMED.