In re the **MARRIAGE OF Rachel Susanne BRAINARD and Eugene Brainard.**

**Upon the Petition of Rachel Susanne Brainard, Petitioner–Appellee/Cross–Appellant,**

**And Concerning Ronald Eugene Brainard, Respondent–Appellant/Cross–Appellee.**

No. 93–1842.

Court of Appeals of Iowa.

Aug. 25, 1994.

Heidi L. Noonan and Jay P. Roberts of Beecher, Rathert, Roberts, Field, Walker & Morris, P.C., Waterloo, for appellant.

Patricia A. McGivern of Clark, Butler, Walsh & McGivern, Waterloo, for appellee/cross-appellant.

Heard by HAYDEN, P.J., and HABHAB and CADY, JJ.

CADY, Judge.

Respondent (Ron) and Petitioner (Sue) appeal from the child custody, visitation, child support, property division and attorney fee provisions of the trial court's decree dissolving their marriage. Custody was the paramount issue at trial, and is the focus of the appeal. The trial court granted sole custody of the children to Sue. We affirm, with modification.

Ron and Sue were married on September 13, 1980. They have two children, Christina and Deborah. Christina was born July 26, 1981, and Deborah was born May 15, 1983. Ron was forty-eight years old at the time of trial. Sue was forty-seven years of age.

Sue was employed as a teacher at the time of the marriage. She had a B.A. degree in elementary education and a Master's Degree in special education. Ron owned and operated two electronics and radio communications businesses prior to the marriage, which he maintained throughout the marriage. Sue quit teaching after Christina was born and worked as a homemaker for the bulk of the marriage. She also assisted in the family business. She has returned to teaching.

Ron brought substantial assets into the marriage, including his business interests, a house, business real estate, vehicles, bank accounts and an individual retirement account. Ron's businesses were valued at $50,000 at the time of the marriage. The assets owned by Sue prior to the marriage included a house, vehicle and IPERS account.

Sue was the primary caretaker of the children during the marriage. Ron, however, maintains a close relationship with his daughters. Christina expressed a preference at trial to live with Ron.

The deterioration of the marriage produced deep hostility and bitterness between Ron and Sue. After time, they developed an inability to communicate, even on matters related to the children. The antagonism continued following the final separation. The professionals involved in the case favored sole or shared custody. The children's attorney recommended Sue be given sole custody.

The marriage was marked by physical violence. Ron displayed a temper and battered Sue on numerous occasions. He also belittled her verbally. Ron attended a batterer's education class following a domestic abuse charge in 1991. Sue also sought counseling and participated in support groups.

The trial court awarded sole custody of the children to Sue, but granted Ron visitation which included the months of March and October and from June 15 to August 10. Ron was also awarded alternating weekends and holiday visitation, as well as visitation on birthdays and other special occasions. Child support was fixed under the guidelines but reduced to an eight-month obligation to recognize Ron's extensive visitation. It was payable monthly.

The property awarded to Sue included the family house and a property settlement of $35,000. One-half of the cash settlement was required to be paid by June 1, 1994, and the remaining portion on June 1, 1995. The value of the net assets awarded to Ron exceeded the value of the net assets awarded to Sue. The award to Ron included all his business property.

Ron argues the best interests of the children require placement of custody with him. He also claims the property division was inequitable and the child support was excessive. Sue also challenges the division of property and claims the child support was inadequate. She believes the visitation arrangement is tantamount to an award of divided custody. Finally, she objects to the trial court's failure to award attorney fees at trial and requests appellate attorney fees.

## I. Scope of Review

■ Our review is de novo. Iowa R.App.P. 4. We are required to examine the record made at trial and determine the issues presented on appeal unimpeded by the findings of the trial court. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). The findings of the trial court, however, are recognized and given weight, especially when considering credibility of witnesses. Iowa R.App.P. 14(f)(7). The trial court has the advantage of hearing the evidence and observing the witnesses. *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992). This important perspective can greatly enhance the decision-making process, and is not forgotten on appeal. *See In re Marriage of Callahan*, 214 N.W.2d 133, 136 (Iowa 1974).

## II. Custody and Visitation

■ The best interest of the child dominates our consideration in child custody cases. Numerous factors exist to supplement the best interest standard, which are enumerated in Iowa Code section 598.41(3) (1993). *See also In re Marriage of Weidner*, 338 N.W.2d 351, 355–56 (Iowa 1983); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). The critical issue in determining the best interests of the child is which parent will do better in raising the child into a healthy, content, and well-adjusted young adult. *See In re Marriage of Rodgers*, 470 N.W.2d 43, 44 (Iowa App.1991).

■ Joint custody is favored whenever reasonable and in the child's best interest. Iowa Code § 598.41 (1993). *In re Marriage of Dunkerson*, 485 N.W.2d 483, 486 (Iowa App.1992). It helps achieve the important goal of assuring children the opportunity for maximum continuing physical and emotional contact with both parents following a dissolution. *Id.* Hostility between parents and their inability to effectively communicate, however, may preclude an award of joint custody. *In re Marriage of Miller*, 390 N.W.2d 596, 602 (Iowa 1986).

Neither party requested or recommended joint custody at trial. Furthermore, the trial court's failure to award joint custody was not raised as an issue on appeal. The positions of the parties are understandable. The testimony at trial, including the expert testimony, disfavored a joint custody arrangement. The children's attorney also rejected the notion of joint custody. The evidence revealed intense hostility between Ron and Sue, and a complete and continuing inability to communicate regarding the children. Ron and Sue were unable to agree on anything during mediation. We only consider the issue of sole custody.

■ We have carefully reviewed the evidence at trial. Although the marriage has been plagued by antagonism, violence and ineffective communication, Ron and Sue have generally shown devotion toward their children. In many ways, they have been better parents than spouses. For the most part, both possess characteristics which would make them suitable custodians. They have also exhibited unfavorable parenting characteristics. Nevertheless, we believe the trial court correctly placed custody with Sue.

In reaching this important conclusion, we recognize the extensive evidence of physical abuse inflicted upon Sue by Ron during the later years of the marriage, as well as Ron's attempt to minimize the abuse.[1] We also recognize the expert testimony adduced at

1. Ron argued on appeal Sue was not suitable to be the custodial parent because she was deceitful. To support this claim, he referred to a "phoney domestic abuse charge" she filed against him. It stemmed from an incident one evening when Ron repeatedly struck Sue with his fist and pulled her hair. Ron promptly apolo-

gized to Sue and they embraced each other. They then showered together and retired to bed where they engaged in intercourse. The next afternoon, Sue reported the abuse to police and a no-contact order was issued by the court. Ron characterized Sue's conduct as deceptive.

trial detailing the tragic and long-term consequences of spousal abuse on children who witness the violence. Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity and a greater likelihood for later problems in interpersonal relationships. The evidence also revealed that children who stand as observers to domestic abuse may develop a low self-esteem and achieve less academic success. Moreover, domestic abuse places children at a greater risk of being physically abused.[2]

■ Our courts have previously recognized that violent tendencies of a parent adversely impact on the fitness of that parent to be the primary caretaker of a child. *See In re Marriage of Snyder,* 241 N.W.2d 733, 734 (Iowa 1976). Similarly, we believe evidence of domestic abuse adversely reflects on the abusing spouse's ability to participate as a joint custodian.[3] We conclude from our de novo review of the record that the trial court correctly awarded custody of the children to Sue.

Sue claims the extensive visitation awarded to Ron under the decree actually transformed the award of sole custody into an award of shared physical care. Ron was awarded visitation which included the months of March and October, June 15 to August 10, and alternating weekends.

■ Shared physical care is generally disfavored in Iowa. *See In re Marriage of Coulter,* 502 N.W.2d 168, 171 (Iowa App. 1993). It is awarded only in the most unusual circumstances. *Id.* Shared physical care often causes problems with parenting, and deprives children of the needed stability in their lives. *Id.* Consequently, it is important not to impose a shared physical care arrangement under the disguise of expansive visitation. Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation. *See In re Marriage of Stepp,* 485 N.W.2d 846, 849 (Iowa App.1992).

■ From our review of the record, we are unable to find sufficient circumstances to

---

**2.** It is estimated that child abuse is present in one-half of homes where spousal abuse is present. H.M. Hughes, *Impact of Spouse Abuse on Children of Battered Women,* 2(12) Violence Up Date 1–11 (1992). There are other significant effects of domestic abuse on children. It is believed that about 70% of batterers grew up in violent homes. U.S. Dept. of Health and Human Services, Clearinghouse on Child Abuse and Neglect and Family Violence Information, *Family Violence; An Overview* (1991). Moreover, children raised in violent homes are much more likely to engage in illegal acts. The history of family violence or abuse is the most significant difference between delinquent and non delinquent youth. G. Miller, *Violence by and Against America's Children,* XVII(12) Journal of Juvenile Justice Digest, 6 (1989).

**3.** We recognize "the safety of the child" is a statutory factor to consider in awarding joint custody under Iowa Code Section 598.41(3)(i) (1993). This statute permits Iowa courts to consider domestic violence as a factor in deciding custody when evidence of harm to the child is presented at trial. Thirty states and the District of Columbia have custody statutes which state or imply that domestic abuse may be a factor to consider in deciding custody. Barbara J. Hart, *Family Violence and Custody Cases,* 43 Juvenile and Family Court Journal 29, 31 (1992). Some states have enacted statutes providing that evi-

dence of domestic abuse invokes a rebuttable presumption that joint custody is not in the best interests of the child. *See* N.D.Cent.Code § 14–05–22.3 (1993); Okla.Stat.Ann. tit. 43, § 112.2 (1994); La.Rev.Stat.Ann. § 9:364A (West 1994). Texas bars its courts from awarding joint custody when domestic abuse is demonstrated in a custody proceeding. *See* Tex.Fam.Code Ann. § 14.021(h) (1994). Similarly, Arizona (Ariz. Rev.Stat. § 25–332 (1993)) and Wyoming presume domestic abuse is contrary to the child's best interests and require their courts to consider domestic abuse when arranging visitation. Wyo. Stat. § 20–2–113(a) (1994). Montana exemplifies a state which treats a finding of domestic abuse as a "sufficient basis for finding that joint custody is not in the best interest of the child." Mont.Code Ann. § 40–4–224(1) (1993). See also Missouri Revised Statutes sections 455.050.4, 455.050.5 (1993) and Revised Code of Washington section 26.09.191(2) and (3) (1993). New Hampshire presumes joint custody is in the best interest of the child but allows the court to make other custody orders when domestic abuse is present. N.H.Rev.Stat.Ann. § 458:17(II)(c) (1992). Florida specifically allows courts to consider evidence of spousal abuse to support a finding that joint custody would be detrimental to the child. Fla.Stat.Ann. § 61.13(2)(b) (1994). See Naomi R. Cahn, *Civil Images of Battered Women: The Impact of Domestic Violence on Child Custody Decisions,* 44 Vand.L.Rev. 1041, 1066 (1991), for further analysis of state statutes.

justify a visitation arrangement which includes four month's visitation during three different times of the year. The same problems associated with an award of shared physical custody would likely follow this arrangement, and would not be in the best interests of the children. We modify the visitation schedule to provide greater stability for the children by striking the March and October visitation provisions and limiting summer visitation to four weeks, to be exercised in intervals of two weeks. Additionally, Ron shall be entitled to visitation during the school spring break every other year, one-half of the school Christmas break, and midweek overnight visitation one day every other week during the school summer vacation. The other visitation provisions established by the district court shall remain.

### III. Child Support

The Supreme Court Child Support Guidelines are used to determine an award of child support except where "special circumstances" exist. *In re Marriage of Gehl*, 486 N.W.2d 284, 286 (Iowa 1992). No special circumstances are alleged in this case. The real question concerns the determination of Ron's net monthly income for purposes of applying the guidelines.

The trial court estimated Ron's monthly income to be $2,368. His 1992 individual tax returns revealed gross wages of $38,815, together with $8,870 in net rental income from his business corporation. Ron's business is operated on land owned by Ron individually. His gross taxable income for 1992 was $50,-208. Ron testified the corporation stopped paying him rent several months prior to trial because the business could no longer afford to pay the rent. The corporation showed profits in 1990 and 1991, but losses in 1992 and 1993.

Although the circumstances surrounding the discontinuation of the rental income are suspicious, it is evident the trial court did not consider the past rental income in determining Ron's net monthly income for purposes of applying the guidelines. We give weight to the trial court's assessment of credibility. Furthermore, income which is speculative and uncertain is not considered in determining a child support award. *See In re Marriage of Pettit*, 493 N.W.2d 865, 868 (Iowa App.1992). We will not disturb the trial court's finding of Ron's net income under the circumstances. However, we modify the support award to provide for regular monthly payments over the full twelve months of the year. Accordingly, the monthly support award shall be $710.

### IV. Property

Under Iowa law, the property of the parties in an action to dissolve a marriage should be distributed equitably after considering all the relevant criteria in Iowa Code section 598.21(1). *In re Marriage of Whelchel*, 476 N.W.2d 104, 107 (Iowa App.1991). Ron and Sue both believe the trial court awarded them an inadequate share of the marital assets.

Ron complains the trial court failed to give him full credit for the assets he brought into the marriage. Our law, however, does not give credit to a party for the value of the property owned prior to the marriage. To the contrary, the property brought to the marriage by each party is only a factor to consider together with the other relevant factors in determining an equitable property division. Iowa Code § 598.21(1)(b) (1993). Only inherited and gifted property are set aside from the distribution scheme, and only if it would not be inequitable to the other party or the children of the marriage. Iowa Code § 598.21(2) (1993).

Sue's objection to the division of property by the trial court can be traced to the values assigned to the marital assets. We find the value placed on the assets by the trial court to be within the range of the evidence and will not disturb it on appeal. *See In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973).

Sue also asks for an award of alimony for protection against any future efforts by Ron to discharge his property settlement in bankruptcy. We do not share Sue's concern that Ron would attempt to discharge his property settlement obligation, nor do we find the issue properly raised on appeal. We con-

clude the district court equitably divided the marital assets under the circumstances of the case.

### V. Attorney Fees

An award of attorney fees is not a matter of right. *In re Marriage of Elbert,* 492 N.W.2d 733, 736 (Iowa App.1992). It rests within the discretion of the court and is essentially based on the financial positions of the parties. *Id.* With this in mind, we will not disturb the decision of the trial court requiring the parties to pay their own attorney fees. We award Sue $750 in appellate attorney fees. Costs of the appeal shall be paid by Ron.

**AFFIRMED AS MODIFIED.**

HABHAB, J., concurs.

HAYDEN, P.J., concurs in part and dissents in part.

HAYDEN, Presiding Judge (concurring in part and dissenting in part).

I respectfully concur in part and dissent in part.

I would grant Ronald two months of visitation for Christina and Deborah between June 15 and August 15 each summer. Except for this, I concur with the majority opinion.