In re the **MARRIAGE OF David GARST**
**and Marilyn Ann Garst.**

**Upon the Petition of**

**David Garst, Appellant,**

**And Concerning**

**Marilyn Ann Garst, Appellee.**

**No. 96–1021.**

Court of Appeals of Iowa.

Nov. 25, 1997.

Peter C. Riley of Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Timothy S. White and Allison M. Heffern of White & Johnson, P.C., Cedar Rapids, for appellee.

Heard by CADY, C.J., and SACKETT and VOGEL, JJ.

VOGEL, Judge.

Petitioner David Garst appeals various economic provisions of the parties' dissolution decree. He argues the district court erred in: (1) awarding Respondent, Marilyn Garst, substantial assets, following a dramatic decline in his financial position during the marriage; (2) awarding Marilyn the marital home; and (3) awarding Marilyn attorney fees. Marilyn requests an award of appellate attorney fees.

***Background facts.*** David and Marilyn were married on March 23, 1985. It was the second marriage for both parties. No children were born to the marriage. David was sixty-nine years of age at the time of trial and Marilyn was sixty-four.

David purchased part of his parent's farm when he was fourteen years old and was engaged in farming. He graduated from Stanford University in 1949. In 1981, David founded Garst Seed Company and was employed there until 1991 when the company was sold. The new owners retained David as a paid consultant.

Marilyn graduated with a degree in nursing from Iowa Methodist School of Nursing in 1952. During her first marriage, Marilyn was primarily a homemaker. After taking refresher courses in the 1970s, Marilyn was hired by Iowa Valley Community College to train nurse's aides. She ultimately became the health coordinator for the college. At the time of the parties' marriage, Marilyn earned $18,000 per year. At David's insistence, Marilyn quit her job when the couple married.

One week prior to the marriage, David presented to Marilyn a prenuptial agreement. After some redrafting, Marilyn signed the agreement. One term provided that if David were to predecease Marilyn, she would receive $50,000 per year for the rest of her life. There was no term contemplating a division of property in a dissolution of marriage. The exhibits to the prenuptial agreement, although somewhat conflicting, indicated that David's net worth exceeded 3 million dollars. His testimony also reflected this amount. Marilyn's net worth was listed at $17,000, composed primarily of a car and personal property.

David testified he invested approximately 2 million dollars, received primarily from the sale of Garst Seed Company, into the Double G Ranch, a farming partnership owned by Marilyn's son-in-law, Orb Greenwald, and David. The ranch was a grain, cattle, and hog operation, in which Orb provided the management and David provided the land plus 95 percent of the working capital. The partnership, however, was not successful, and eventually was liquidated through a receivership. The problems associated with the liquidation caused a great deal of strain between David and Marilyn and ultimately led to the dissolution of the marriage. Both parties acknowledged the marriage had been very successful and happy until that time.

***Scope of review.*** In this equity action, our review is de novo. Iowa R.App. P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of the witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

***I. Property division.*** The trial court assigned the following assets to each party:

| Property | David | Marilyn |
|---|---|---|
| 320 4th Ave. Coon Rapids, IA | | $ 75,000.00 |
| 409 Main Street office | $ 17,500.00 | |
| Lee Farm (240 acres) | $600,000.00 | |

| | David | Marilyn |
|---|---|---|
| Brutsche Farm (160 acres)[1] | | $114,000.00 |
| 1985 Ford LTD | $ 2,000.00 | |
| 1990 Ford LTD | | $ 4,000.00 |
| Personal Property | Equal | Equal |
| Plowshares | unknown | |
| Agra Romania Corp. | unknown | |
| Hog facility | unknown | |
| | | |
| TOTAL | $619,500.00 | $193,000.00 |

The trial court also assigned the debts as follows:

| Debts | David | Marilyn |
|---|---|---|
| Credit cards | $ 43,947.23 | |
| ASCS deficiency | $ 8,461.99 | |
| Feldman & Co. | $ 2,377.04 (contested) | |
| Community Insurance | $ 3,877.00 | |
| Heartland Land Mgm't | $ 4,307.75 (contested) | |
| CFA loan | $108,000.00 (contested) | |
| Smith law firm judgment | $ 26,000.00 (contested) | |
| Glidden Bank loan | $ 30,000.00 | |
| | | |
| TOTAL | $226,971.01 | |

### Summary

| | David | Marilyn |
|---|---|---|
| Assets | $619,500.00 | $193,000.00 |
| Debts | $226,971.01 | None |
| | | |
| TOTAL | $392,528.99 | $193,000.00 |

■ David contends the district court erred in awarding Marilyn substantial assets as he claims Marilyn made no contribution to the appreciation or accumulation of assets and there was a substantial decline in David's net worth during the marriage. In making an equitable distribution of assets, the court must first determine what assets are available to be allocated between the spouses. *In re Marriage of Driscoll,* 563 N.W.2d 640, 641–42 (Iowa App.1997). To do this, the court must identify and value the assets of the parties, both jointly and separately. *In re Marriage of Brainard,* 523 N.W.2d 611, 616 (Iowa App.1994). The value of the assets should then be determined as of the date of trial. *Locke v. Locke,* 246 N.W.2d 246, 252 (Iowa 1976); *In re Marriage of McLaughlin,* 526 N.W.2d 342, 344 (Iowa App.1994). Next, a determination must be made as to the allocation of those assets. Assets are equita-

bly, not necessarily equally, divided under the circumstances after considering the criteria delineated in Iowa Code section 598.21(1) (1995).

One factor the court considers in making an equitable division of property is what each party brought to the marriage. Premarital assets, unlike gifted and inherited property,[2] are subject to division. *See* Iowa Code § 598.21(1)(b); *Brainard,* 523 N.W.2d at 616. David brought substantial assets to the marriage; Marilyn brought few.

The statute also directs us to consider contributions to a marriage in determining what each party receives upon the dissolution of the marriage. *See* Iowa Code § 598.21(1). This factor draws considerable attention when premarital assets have appreciated in value and the dispute is over how much of the assets with the attendant appreciation

---

1. Both the Lee and Brutsche farms were obtained after the failed Double G partnership.

2. Gifted and inherited property is not subject to division unless a the court finds to not do so would be inequitable. Iowa Code § 598.21(2).

will be divided. However, when the value of premarital assets remains constant or declines during the marriage, the same statutory factor—the contribution of the parties—is still considered. The change in value of the asset is not critical to the analysis.

■ David's net worth declined substantially during the marriage. In addition, David accumulated substantial debt resulting in large part from the failed partnership and fees for former attorneys. His premarital wealth in excess of 3 million dollars diminished to less than 1 million upon its dissolution. David faults Orb Greenwald with the decline in value, as it was his partnership with Orb that went sour. Marilyn counters that David gave up on the partnership prematurely, forcing it into receivership when it was still viable. Neither argument is worthy of serious consideration in our analysis. Neither party is claiming waste. *See, e.g., Maschmeier v. Southside Press, Ltd.,* 435 N.W.2d 377 (Iowa App.1988). Substantial assets were lost in the process and the trial court simply was faced with fewer assets to divide.

With the backdrop of David's net worth, we consider Marilyn's contributions to the marriage. First, it is noteworthy that Marilyn was employed at the time of the marriage, with accumulating social security and IPERS benefits. She quit her job and moved from State Center, where she had lived for 30 years, to Coon Rapids upon David's assurances that he would provide for her. After they were married, Marilyn supported David's business ventures. She made his travel arrangements, traveled with him on his business trips, and entertained at home for David's clients and business associates. She made a significant contribution to the marriage, bringing skills to the marriage that David lacked, needed, and fully employed. Her interpersonal skills were utilized to promote David's business ventures. David readily admits Marilyn was a "wonderful wife" and a valuable asset to his business.

Marilyn also contributed to the current value of the residence. At the time of their marriage, the residence needed attention. The parties spent approximately $60,000 remodeling the home, with Marilyn overseeing much of the work, including the redecorating

and landscaping. The parties agreed the home was worth approximately $75,000.

The trial court summarized the other factors it considered in making the property division as follows:

> Marilyn did not bring much wealth to the marriage but she did bring all that she had, including her future security. She had a job and financial security which she gave up to accept David's proposal and rely solely on him for her well-being. David did not want Marilyn to work. He wanted her to travel with him on his various business ventures, which she did. He wanted her to entertain in their home for business associates, which she did. He wanted her to tend to his needs, which she did.... Marilyn must be placed in a position that will compensate her for the financial security that she gave up when she accepted David's marriage proposal.

Marilyn sacrificed her employment and future security not only to be David's wife but also to be a vital asset to his business ventures. We agree with the trial court that it would be inequitable to set off to David the bulk of the remaining assets and only assign to Marilyn her car, personal property, and a cash award of $54,000 which David proposed. To do so would leave Marilyn at age sixty-four with only those assets and her Social Security of $5200 per year to live on. By awarding Marilyn the Brutsche farm and the residence, the trial court gave her an income-producing asset and a place to live. However, neither Marilyn nor David will enjoy the lifestyle once shared while they were married. The reality is that both must share the consequences of depleted assets. We must review the distribution of assets in light of the substantial debt David is left to pay.

David concedes Marilyn is not responsible for the farm debts, but asks that he be awarded the Brutsche farm to help service the debt. Rather than awarding Marilyn the Brutsche farm, we find a more equitable distribution would be for the Brutsche farm to be awarded to Marilyn and David in equal shares, as tenants in common. This modification more closely achieves equity between

the parties. We affirm the allocation of debt in light of the property modification.

*II. Attorney fees.* David lastly asserts the trial court erred in ordering him to contribute $10,000 towards Marilyn's attorney fees. He argues he had already given Marilyn $7000 for attorney fees. He contends Marilyn is capable of paying her own attorney fees given the property she received pursuant to the decree. Marilyn also requests an award of appellate attorney fees.

*A. Trial court.* An award of attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Gilliam*, 525 N.W.2d 436, 439 (Iowa App. 1994). The itemization of fees submitted by Marilyn's attorney was $12,775.69. The record supports that the parties lived together after the filing of the petition and Marilyn continued to be partially dependant upon David for support. The record, however, does not provide an adequate tracing of recent income and expenses for us to conclude the trial court abused its discretion in awarding attorneys fees to Marilyn. We affirm the award.

*B. Appellate court.* Marilyn requests attorney fees for defending this matter on appeal. We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *In re Marriage of Roberts*, 545 N.W.2d 340, 345 (Iowa App.1996). Given the distribution of assets and economic consequences to both parties, we determine Marilyn is not entitled to appellate attorney fees. Costs on appeal are to be assessed one-half to each party

**AFFIRMED AS MODIFIED.**

MAHAN, J., takes no part.