# IN THE COURT OF APPEALS OF IOWA

No. 21-1876
Filed October 5, 2022

**IN RE THE MARRIAGE OF DAVID MICHAEL WNUK**
**AND KRISTEN MARIE KNAUSS**

**Upon the Petition of**
**DAVID MICHAEL WNUK,**
　　　Petitioner-Appellee,

**And Concerning**
**KRISTEN MARIE KNAUSS,**
　　　Respondent-Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


　　　A mother appeals a child custody decision awarding primary physical care of her child to his father. **AFFIRMED.**


　　　Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

　　　Jordan Hutchinson of Hutchinson Law Firm, P.L.C., West Des Moines, for appellee.


　　　Considered by Ahlers, P.J., and Badding and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Kristen Marie Knauss appeals, challenging the custody and physical care provisions of the decree entered November 15, 2021, regarding her child, G.T.W. The decree maintained joint legal custody while awarding primary physical care to the child's father, David Michael Wnuk. Kristen requests that she be awarded primary physical care and sole legal custody. Having reviewed the record, we affirm the district court's decision.

## I. Background Facts and Proceedings.

Kristen and Michael began dating in early 2017, married in August, and had a son in January 2018. Michael filed for divorce in March 2020. Their contentious relationship has produced many calls to the police and the Iowa Department of Health and Human Services (DHHS). Accusations have flown from both sides, while the truth has remained elusive. A criminal no-contact order remains in place protecting Kristen from Michael, which allows in-person exchanges and communication regarding the minor child.

At the time of trial, Michael was employed full-time as a respiratory therapist. He was living with his sister and planning to move out upon the sale of the marital home. Kristen was living in the marital home and planning to move in with her parents after the sale. Kristen was a registered nurse, but the status of her professional license is in limbo. In the summer of 2017, she was flagged by her employer for improper recordkeeping of prescription painkillers. Kristen agreed to a settlement with the Iowa Board of Nursing (IBON) involving a fine and completion of continuing educational credits. She began working for a different hospital one month later. In April 2019, the new employer placed Kristen on unpaid leave.

Rather than cooperate with their investigation, Kristen resigned at her attorney's recommendation. She did not work again until February 2020. She broke her leg in May and has not worked since then. She learned of a new investigation by the IBON in November and expressed doubt about her ability to return to a career in nursing.

Kristen indicated she has been waiting to look for work until her children's schedules are settled. She had another custody dispute pending at the time of trial for a daughter from a previous relationship. She also stated that taking care of G.T.W., who has been diagnosed with Autism Spectrum Disorder, is a full-time job. Kristen admitted to abusing alcohol from late 2019 until approximately the summer of 2020.

The divorce decree conferred joint legal custody with primary physical care awarded to Michael. The court ordered Kristen to make monthly child support and medical support payments to Michael. The visitation schedule provides Kristen with six overnights during each two-week period. Under Kristen's timely appeal, the allocation of physical care and legal custody are at issue.

## II. Review.

Our review of custody proceedings is de novo. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). We give weight to the district court's factual findings and credibility determinations, though we are not bound by them. *Id.*; Iowa R. App. P. 6.907. "Prior cases have little precedential value, except to provide a framework for analysis, and we must base our decision on the particular facts and circumstances before us." *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

4

### III. Discussion.

The governing factor in child custody determinations is the best interests of the child. Iowa R. App. P. 6.904(3)(o). Similarly, the objective in assigning physical care is placement in an "environment most likely to bring the children to healthy physical, mental and social maturity." *In re Marriage of Bartlett*, 427 N.W.2d 876, 877 (Iowa Ct. App. 1988). Iowa Code section 598.41(3) (2020) sets forth a nonexclusive list of factors for consideration in custody disputes, which include the suitability of each parent as a custodian, the parents' ability to communicate, whether the psychological and emotional needs and development of the child will suffer from lack of contact and attention from both parents, the previous pattern of caregiving, each parent's support of the other, geographic proximity, and safety. These factors are likewise relevant to determine the allocation of physical care. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). Additional facts and circumstances are also appropriate to consider, including:

(1) The characteristics of each child, including age, maturity, mental and physical health.
(2) The emotional, social, moral, material, and educational needs of the child.
(3) The characteristics of each parent, including age, character, stability, mental and physical health.
(4) The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.
(5) The interpersonal relationship between the child and each parent.
(6) The interpersonal relationship between the child and its siblings.
(7) The effect on the child of continuing or disrupting an existing custodial status.
(8) The nature of each proposed environment, including its stability and wholesomeness.
(9) The preference of the child, if the child is of sufficient age and maturity.

(10) The report and recommendation of the attorney for the child or other independent investigator.
(11) Available alternatives.
(12) Any other relevant matter the evidence in a particular case may disclose.

*In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). Fairness to the parents is not an appropriate basis for resolution. *See Hansen*, 733 N.W.2d at 695.

Here, neither parent established a particularly favorable case for their suitability as the primary caretaker. The district court found "any expressions of remorse by either party for past bad behavior toward each other not credible." The court also found none of the parties' character witnesses credible and gave their respective statements no consideration. However, the court noted "Michael took slightly more accountability than Kristen for his part in the parties' past actions that were contrary to G.T.W.'s best interest" and "he appears to be the more stable parent currently." Overall, the decree presents an implied credibility finding in favor of Michael, which we do not find occasion to disturb.

Although Kristen has been a primary caregiver leading up to the trial, the general preference for continuity does not dictate that she remain the custodial parent. *See In re Marriage of Decker*, 666 N.W.2d 175, 178 (Iowa Ct. App. 2003). Moreover, she and Michael shared parenting responsibilities during their marriage. In fact, Michael became the primary caretaker in the months leading up to his departure from the marital home and took G.T.W. to medical appointments. Under Kristen's subsequent care, G.T.W. missed check-ups and was not seen by his pediatrician for more than one year. "[P]ast caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional

bonds that are so difficult for courts to ascertain." *Hansen*, 733 N.W.2d at 696 (citation omitted).

Kristen testified that she would tell Michael things that were not true in order to gain his attention. A report from her emergency hospital visit in August 2020 stated that she admitted to taking thirty Xanax that day. Kristen testified that she made this statement but that it was not true. She stated that her alcohol consumption caused a bad reaction with her prescription medication. She was evasive regarding the investigation into her professional performance. Kristen focused on her disdain for Michael evidently making the anonymous report to the IBON rather than acknowledging any role her actions might have played in its investigation. On the other hand, Michael has not exhibited problems with alcohol or other substances. He demonstrated structure and stability, and he worked overtime to financially support his son. Given Kristen's history of substance abuse and lack of accountability, we find the district court acted equitably in awarding primary care to Michael. *See In re Marriage of Harris*, 499 N.W.2d 329, 331–32 (Iowa Ct. App. 1993) (expressing concern for the mother's "inability to accept responsibility for her own actions," problems with alcohol, and lack of financial stability).

At this time, Kristen also requests sole legal custody. However, in light of the record and overall placement, we decline to alter the joint custody decreed by the district court. After all, "[j]oint custody is favored whenever reasonable and in the child's best interest." *In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994) (citations omitted). While domestic abuse weighs against joint custody, there was not a finding of domestic abuse against Michael. *See id.* at

615. Michael consented to the no-contact order, and there was discord as to who was the primary aggressor. "Hostility between parents and their inability to effectively communicate . . . may preclude an award of joint custody." *Id.* at 614. However, we believe the parties will continue to act in the best interests of their child. *See id.* ("Although the marriage has been plagued by antagonism, violence and ineffective communication, [the parties] have generally shown devotion toward their children."). Although Michael's concerns regarding his son's diagnosis and insurance coverage caused discord with Kristen, they were not unreasonable under the circumstances. Because the court ruled consistently with the best interests of the child, we affirm its physical care and custody determinations.

Both parties request appellate attorney fees. Considering the merits each side presented, we decline to award attorney fees to either party.

**AFFIRMED.**