# IN THE COURT OF APPEALS OF IOWA

No. 22-1551
Filed December 7, 2022

**IN THE INTEREST OF A.R.,**
**Minor Child,**

**C.R., Father,**
Appellant

_____

Appeal from the Iowa District Court for Butler County, Peter B. Newell, District Associate Judge.

A father contests the termination of his parental rights to his now three-year-old son. **AFFIRMED.**

Mark A. Milder, Denver, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Elizabeth Batey of Vickers Law Office, Greene, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

Christopher refused to acknowledge "how his domestic violence, mental health issues, and substance abuse created a danger to his child's safety." Focusing on that refusal, the juvenile court terminated Christopher's parental relationship with A.R. Appealing termination, Christopher contends the State did not prove its case and did not meet its reasonable-efforts mandate. *See* Iowa Code § 232.116(1) (2022). He also believes that termination is not in A.R.'s best interests. *See id.* § 232.116(2). And he urges us to apply the factors in paragraphs (a) and (c) of section 232.116(3) to avoid termination. Finally, he claims termination violates his due process rights because A.R.'s mother, who retained her parental rights, favored preserving the father-son relationship. Alternatively, he asks for a six-month delay in permanency. After an independent review, we affirm the juvenile court's thorough and well-reasoned termination order.[1]

## I.    Facts and Prior Proceedings

Four-month-old A.R. was present when his father assaulted his mother. In February 2020, police were dispatched to the family's home after Christopher struck A.R.'s mother in the face and threw her down. She nearly landed on the infant. Based on those facts, child protective services released a founded report documenting denial of critical care.[2] A few months later, the court adjudicated A.R.

---

[1] We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.*

[2] This incident was not Christopher's first case of child abuse. Allegations of domestic violence and substance abuse led to founded reports involving his other children in 2009 and 2016.

as a child in need of assistance. Although the Iowa Department of Health and Human Services was concerned about the mother's mental health and the parents' poor "relationship skills," the court did not remove A.R. from their custody.

That is, not until January 2021, when Christopher smashed a beer can against the mother's head and strangled her until she nearly passed out. The mother lost a tooth in the assault. A.R. was again present during the domestic abuse. Christopher's violence prompted the court to remove A.R. from his custody.[3] And a no-contact order prevented Christopher from interacting with A.R.'s mother. A.R. stayed with his mother, who moved in with her parents.

But when the mother requested—over the department's objection—that the no-contact order be lifted in July 2021, the juvenile court saw a clear danger to A.R. So the court removed the child from the mother's custody and placed him with the maternal grandparents. That placement too was short-lived. The department moved A.R. into foster care in October 2021 because the grandparents could not set boundaries for the parents.

As the new year began, the department viewed the ongoing "toxic" relationship between the parents as the main barrier to bringing A.R. home. In March 2022, the father challenged the department's reasonable efforts toward reunification. After an evidentiary hearing, the court found the department was meeting its reasonable-efforts mandate. Instead, the court laid the blame for continued removal at Christopher's feet. He did not cooperate with the

---

[3] The court also ordered both of A.R.'s parents to undergo drug testing.

department's directives to avoid contact with A.R.'s mother. He did not address his mental-health issues, and he struggled to tamp down his anger and aggression.

On a positive note, by the time of the permanency hearing in May 2022, the mother had achieved steady progress in her mental-health and substance-abuse treatment. Not so for Christopher. He did not sign releases for the department to monitor his substance-abuse treatment, despite testing positive for methamphetamine and THC in April 2022. His moods remained volatile, and he persisted in manipulating A.R.'s mother. In response to the parents' divergent situations, the department recommended reunification with the mother as the permanency goal for A.R. By contrast, the court directed the State to petition to terminate Christopher's parental rights. After the State filed that petition, Christopher asked to meet alone with the department case manager. Christopher was "very, very upset" and kept interrupting her. The case manager described that "uncomfortable" encounter:

> You could see the anger in his face and his eyes. . . . [H]e was visibly shaking. His lips were quivering. . . . [H]e was clenching his fists. . . . [A]t one point I remember wondering should I maybe leave, . . . but I just continued to sit there and listen to what he had to say.

The juvenile court held trial on the State's petition across three days during the summer of 2022. The case manager was a key witness for the State. She testified that Christopher's pattern of domestic violence prevented him from co-parenting A.R. In her view, Christopher continued to "exert manipulation and control" over A.R.'s mother, even when there was no physical violence. The case manager expressed concern that Christopher refused to recognize how domestic

violence affected his son.  She also discussed the risk to a child from a parent's methamphetamine use.

In its September order, the court terminated Christopher's rights under Iowa Code section 232.116(1), paragraphs (h) and (*l*).  Christopher appeals that order.

## II.    Analysis

In most termination cases, we ask three questions.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, did the State prove a ground for termination under section 232.116(1)?  *Id.* at 472–73.  Second, if so, is terminating parental rights in the child's best interests measured by the criteria in section 232.116(2)?  *Id.*  And third, is there a countervailing factor in section 232.116(3) that would weigh against termination?  *Id.*  We examine each question in turn.

### A.  Statutory Ground/Reasonable Efforts

Christopher contends the juvenile court erred in terminating his parental rights under paragraphs (h) and (*l*) of section 232.116(1).  We may affirm on either ground if supported by clear and convincing evidence.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  We pick paragraph (h).  To satisfy that ground, the State needed to prove by clear and convincing evidence:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing").

In challenging the fourth element, Christopher contends "there is insufficient evidence to show that any of the issues alleged to exist concerning the father have had any impact on his ability to provide safe care for this child."

We disagree with his contention. In fact, his appellate argument echoes his failure to acknowledge responsibility in the juvenile court. Christopher minimizes his abusive acts and denies their impact on A.R. He insists A.R. did not suffer "any direct harm at the hands of his father." This line of argument fundamentally misconstrues the menace of domestic violence.[4] As we have recognized: "Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity and a greater likelihood for later problems in interpersonal relationships." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994). Violence in the home also puts the children themselves in harm's way. *See id.* Because Christopher lacks insight into the danger posed by his domestic abuse, A.R. cannot be safely returned to his custody. Termination was proper under paragraph (h).

Christopher also contends that the department did not make reasonable efforts at reunification.[5] *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he

---

[4] Christopher also belittles the case manager's feeling of intimidation when meeting alone with him, blaming their "severely damaged" working relationship. What he fails to recognize is that his hostility caused the damage. A parent's inability to act with civility toward professionals working on their case is a relevant consideration when determining whether that parent is ready to resume custody. *See In re M.P.*, No. 19-0995, 2019 WL 5063337, at *4 (Iowa Ct. App. Oct. 9, 2019).
[5] The State argues Christopher should have raised this claim when objecting to termination. But we find that his motion for reasonable efforts preserved error.

reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, [it] . . . impacts the [State's] burden of proving the elements of termination which require reunification efforts."). The department must "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *Id.* (citation omitted).

Christopher claims reasonable efforts were lacking because the department mandated fully supervised interactions through early 2022 though he alleges being substance free for months. But the department had legitimate reasons not to expand visitation. Christopher failed to take responsibility for his acts of violence and failed to release information about his mental-health or substance-abuse treatment. Given his own recalcitrance, Christopher's reasonable-efforts challenge fails.

**B. Best Interests**

Christopher argues that termination is not in A.R.'s best interests because they have a strong bond and the child is healthy and happy. His argument overlooks the structure of Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). That provision considers the child's safety, as well as the best placement for furthering his "long-term nurturing and growth" and his "physical, mental, and emotional condition and needs." Iowa Code § 232.116(2). Applying that framework, we find terminating Christopher's parental rights will promote a safer environment for A.R. His future will be brighter without the specter of a parent engaging in domestic violence and methamphetamine use.

### C. Countervailing Factors

Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3).  *See A.S.*, 906 N.W.2d at 475–76.

Christopher contends his rights should not have been terminated because a relative has legal custody of A.R.  *See* Iowa Code § 232.116(3)(a).  He insists "there is little to gain and much to lose" by terminating the rights of one parent when the child remains with the other parent.  The State counters that this exception does not apply because A.R. was in the custody of the department "at all relevant times."  *See In re A.M.*, 843 N.W.2d at 103, 106, 113 (noting exception did not cover grandparents taking care of child when department had legal custody).  We agree with the State's position.  But even if the mother had legal custody of A.R., Christopher's pattern of domestic abuse would tilt the scales away from applying this exception.

Christopher next argues that termination was improper because all parties agree that he has a "very strong bond" with A.R.  *See A.S.*, 906 N.W.2d, at 476.  That provision allows a court to preserve parental rights if clear and convincing evidence shows that the termination would harm the child given the closeness of the parent-child relationship.  Iowa Code § 232.116(3)(c).  True, the record shows a close bond between father and son.  But the record also shows that A.R. forms bonds easily and "has a solid attachment to other caregivers."  In this circumstance, any disadvantage from severing the tie to Christopher will be mitigated by A.R.'s ability to develop other supportive relationships.

**D. Due Process**

Next Christopher emphasizes his "fundamental liberty interest in the care, custody and control" of his child. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000). He points out that the mother's rights were not terminated and that she favors preserving his relationship with A.R. From there, Christopher contends terminating his rights "goes well beyond what was necessary and interfered with these parents' constitutional rights to raise their family as they see fit."

We read Christopher's claim as one of substantive due process. When a party alleges that specific government conduct violates substantive due process, we apply the shocks-the-conscience standard to assess the claim. *Lennette v. State*, 975 N.W.2d 380, 393–94 (Iowa 2022). Nothing in this record signals that kind of egregious governmental abuse. The department acted on reasonable evidence that Christopher's conduct posed a risk to his young son. Christopher cannot show a due process violation.

Moreover, Christopher cannot rest his argument for reversal on the court's preservation of the mother's rights. He must advance his own reasons, separate from those facts supporting the mother, to overcome termination. *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). His petition on appeal does not meet that standard.

**E. Six-Month Deferral of Permanency**

As an alternative to termination, Christopher asks for more time to correct the deficiencies in his parenting. Under section 232.117(5), the juvenile court may delay permanency for up to six months as an alternative to terminating parental rights. *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June

3, 2020). A reprieve is appropriate if the court can point to "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after that time. Iowa Code § 232.104(2)(b). But no such conditions emerge here. Christopher still struggles with methamphetamine use. And despite his engagement with services, he refuses to recognize the power-and-control issues in his relationship with A.R.'s mother or to control his anger and frustration. Under these circumstances, a six-month extension was not warranted.

Finding no grounds for reversal, we affirm the termination of Christopher's parental rights.

**AFFIRMED.**