# IN THE COURT OF APPEALS OF IOWA

No. 25-0460
Filed December 3, 2025

IN RE THE MARRIAGE OF ROCHELLE IRENE STRAIGHT
AND JERRY DUANE STRAIGHT

Upon the Petition of
**ROCHELLE IRENE STRAIGHT,**
     Petitioner-Appellant,

**And Concerning**
**JERRY DUANE STRAIGHT,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Harrison County, Eric J. Nelson,

Judge.

A petitioner appeals from the property-division provisions of the decree

dissolving her marriage. **AFFIRMED**.

Michael J. Winter, Council Bluffs, for appellant.

Drew H. Kouris, Council Bluffs, for appellee.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

Rochelle Straight appeals from the decree dissolving her marriage to Jerry (Duane) Straight. Rochelle challenges the district court's property division, arguing it failed to consider the premarital property she brought to the marriage when dividing the assets and debts of the marriage. We find the court equitably considered Rochelle's premarital contributions to the marriage. On review, we affirm the district court's decree.

### I. Background Facts and Proceedings.

In 2023, Rochelle and Duane separated after eight years of marriage. At the time of the marriage, Rochelle's net worth was $900,000 while Duane's was little to nothing. Rochelle owned a home the parties lived in both before the marriage and early in the marriage. In 2017, Rochelle sold the home for $350,000 and used the proceeds to buy various marital assets the parties used during the marriage. Rochelle used $270,000 from that sale to purchase a new home the parties lived in throughout the remainder of the marriage. The new home had no mortgage, and during the marriage, Rochelle paid all utility bills and real estate taxes on the property. Duane contributed to some of the living expenses by providing portions of his paycheck and claimed he made some improvements to the home. At trial, the parties agreed that the home was valued at $475,000. Both parties were fifty-seven years old at the time of trial. Rochelle worked at a bank as a teller, along with some other part-time work. Duane operated his own contracting business and previously did some work in the agricultural industry and drove a truck.

Rochelle used the remainder of the proceeds from the sale of her old home to buy other marital assets, including a Chevy Silverado used by Duane.[1] A speedboat with a trailer and a lawnmower were also bought with the proceeds from the sale of Rochelle's old home.

In addition to the marital assets, the parties accumulated significant debt during the marriage. Notably, the parties borrowed $100,000 from a bank to purchase a second house to renovate and resell. The marital home was used as collateral on the loan, and $34,000 was drawn down from the bank loan to buy the second house. The house was later resold for $50,000.

While the parties dispute what should be labeled "marital assets," the district court found the parties total marital assets to be $554,684.55 and their total debts to be $191,301.44, for a total net worth of $363,383.11. Without considering Rochelle's contributions to the asset pool, the parties agreed that the total value of the property accumulated during the marriage was $37,334.55. In the decree, the district court divided the parties' assets and debts. The district court's division of the house proceeds reflected a credit of $200,000 to Rochelle to recognize her premarital contribution to the marriage. The district court ordered that the marital debt be equally divided between the parties apart from (1) the debt on a 2017 GMC Yukon the court awarded Rochelle, and (2) the outstanding $100,000 bank loan, with the court assigning $75,000 of the debt to Rochelle, and the remaining

---

[1] The Silverado was later totaled, and the parties' insurance company offered to pay $18,667.55. The district court found that the parties were each entitled to half of the payment and awarded them both $9333.77.

$25,000 to Duane.[2]  While the district court awarded Rochelle the marital home, it also ordered her to refinance the home in the amount of $100,000 to satisfy the line of credit from the outstanding bank loan.

Returning to the district court's division, the district court determined Duane was entitled to $103,433.07 of the total assets of the marital estate after subtracting his portion of the marital debt.  To arrive at that award, the district court allocated assets from the marriage to Duane totaling $31,583.77 and then ordered Rochelle to make an equalization payment to Duane in the amount of $71,849.30.  After considering the equalization payment, Rochelle received the remaining $259,950.04 of the marital estate.

Rochelle timely filed a motion to reconsider under Iowa Rule of Civil Procedure 1.904(2), which the district court denied.  Rochelle appeals.

## II.  Standard of Review.

"An appeal regarding the dissolution of marriage is an equitable proceeding." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).  We review equitable proceedings de novo.  *Id.*  Under de novo review, "[w]e review the facts and law, and adjudicate once again those issues properly preserved and presented." *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).  "We will disturb

---

[2] The district court noted that Duane had agreed to purchase the house to flip it with the understanding that the proceeds from the resale would go toward repaying the loan.  However, after the $50,000 from the sale of the house was used to repay the debt, Rochelle continued to draw on the line of credit after the parties separated without Duane's consent, causing the balance on the loan to rise to $100,000 again.  Therefore, the district court found Duane was only required to pay half of the $50,000 debt that existed before Rochelle's additional drawings from the line of credit.

the district court's ruling only when there has been a failure to do equity." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) (cleaned up).

### III. Discussion.

Rochelle argues that the district court failed to equitably divide the assets and debts of the marriage because the district court did not take into account the disparity between what she brought into the marriage and what Duane brought into the marriage. If that disparity had been considered, Rochelle contends she should not have had to pay an equalization payment to Duane. Much of Rochelle's argument focuses on the fact that when she married Duane, she had a net worth of $900,000, but at the time of trial, her net worth was $400,000 based on the equity in the marital home, whereas Duane "brought little or nothing into the marriage." According to Rochelle:

> An equitable division of the assets and debts would have awarded all of the assets of the marriage except for that itemized personal property awarded to [Duane], would have required Rochelle to pay all of the debt, would have denied to [Duane] an equalization payment and would have awarded to Rochelle all of the insurance proceeds from the damaged Chevy Silverado in the amount of $18,667.25.

"[O]ur courts equitably divide all of the property owned by the parties at the time of divorce except inherited property and gifts received by one spouse." *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007). "Iowa courts do not require an equal division or percentage distribution. The determining factor is what is fair and equitable in each circumstance." *In re Marriage of Hansen*, 886 N.W.2d 868, 871 (Iowa Ct. App. 2016) (citation omitted). "In equitably dividing the parties' property, the court considers the factors provided in Iowa Code section 598.21(5) [(2025)]." *Id.*

Rochelle argues "[a]lthough the trial court specifically identified the factors to be considered as set out in Section 598.21(5) of the Iowa Code, the court did not do equity as far as [she] is concerned." In her equity argument, Rochelle contends that Duane "leaves the marriage substantially better off than when he married [her] and she is leaving the marriage in a much worse financial condition than when she entered the marriage." Duane argues that Rochelle has not shown how the decree was inequitable.

As the district court noted, the "fighting issue" in this case is the premarital property Rochelle brought into the marriage. We note, "[p]remarital property may be included in the divisible estate." *McDermott*, 827 N.W.2d at 678. Rochelle asserted, and the district court agreed, at the time the parties entered the marriage she had a net worth of $900,000, while Duane's net worth was "roughly zero." But Iowa law "does not give credit to a party for the value of the property owned prior to the marriage. To the contrary, the property brought to the marriage by each party is only a factor to consider together with the other relevant factors in determining an equitable property division." *In re Marriage of Brainard*, 523 N.W.2d 611, 616 (Iowa Ct. App. 1994). And a district court "may not separate a premarital asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." *In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (cleaned up). Here, the district court made clear it considered Rochelle's premarital property in its decree: "The Court must consider that [Rochelle] brought roughly $900,000 to the marriage while Duane brought no net worth. For this Court to completely ignore Rochelle's initial contributions to the

marriage would be inequitable." To that end, the district court found "it [was] fair for Rochelle to be awarded a $200,000 benefit for her premarital contributions."

That Rochelle had significantly more assets than Duane when they married was a factor for the district court to consider but was not per se determinative in the divorce decree. *Id.*; *see also In re Marriage of Scott*, No. 05-0333, 2005 WL 3478124, at *3 (Iowa Ct. App. Dec. 21, 2005) ("Property brought into the marriage by a party is merely a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage."). The district court properly considered the assets both parties had before the marriage along with the other factors in section 598.21(5).

By finding that Duane was entitled to $103,433.07 of the total net worth of the marital estate, the remaining $259,950.07 of the estate was awarded to Rochelle. Without the equalization payment after this almost ten-year marriage, Rochelle would have walked away from the marriage with $331,799.34 of the marriage estate, while Duane would have left with $31,583.77. Based on the facts and circumstances of the marriage, we do not see how that would have been an equitable result. Instead, even after paying Duane the equalization payment, Rochelle still leaves the marriage with a significant portion of the marital assets. We agree with the district court that requiring Rochelle to pay the equalization payment reached an equitable result.

**AFFIRMED.**