# IN THE COURT OF APPEALS OF IOWA

No. 19-0705
Filed February 5, 2020

IN RE THE MARRIAGE OF JACOB R. BROWN
AND ABBY S. BROWN

Upon the Petition of
JACOB R. BROWN,
  Petitioner-Appellant/Cross-Appellee,

And Concerning
ABBY S. BROWN,
  Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

Jacob Brown appeals, and Abby Brown cross-appeals, the decree dissolving their marriage. **AFFIRMED AS MODIFIED ON BOTH APPEALS AND REMANDED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

M. Leanne Tyler of Tyler & Associates, PC, Bettendorf, for appellee.

Heard by Vaitheswaran, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MULLINS, Judge.**

Jacob (Jake) Brown appeals, and Abby Brown cross-appeals, the decree dissolving their marriage. Jake challenges the physical-care, visitation, right-of-first-refusal, and spousal-support provisions of the decree. Abby challenges the court's spousal-support award as inadequate and the award of a portion of her pre- and post-retirement death benefits to Jake as inequitable.

## I.  Background Facts and Proceedings

The parties married in 2004. The marriage produced two children, a son, born in 2006, and a daughter, born in 2008. At the time of trial, both parties were thirty-eight years of age. Both are in good physical health.

Jake has a college degree in business management. He is employed as an "area specialty manager" in sales for a large pharmaceutical company. At the time of trial, Jake's gross annual income amounted to $178,000.00.[1] Jake is very good at his job. His job requires frequent travel; he is typically away on business at least two or three nights per week. At least twice per year, he is required to be away on business for a week at a time. The record alludes to the fact that some of Jake's business trips were extended before and after the parties' separation for the purpose of spending social time with his girlfriend in Minnesota.[2] Abby possesses bachelor's and master's degrees. She is employed as a kindergarten

---

[1] This figure includes an annual base salary of $122,000.00 and an annual bonus Jake anticipated would amount to $56,000.00.

[2] We disavow any indication of fault against Jake for his extramarital affair—Iowa is a no-fault dissolution-of-marriage state. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). "[W]e only consider a party's indiscretions if [a] child was harmed by the behavior." *In re Marriage of Rothfus*, No. 13-1745, 2014 WL 2885340, at *4 (Iowa Ct. App. June 25, 2014).

teacher. Her gross annual income at the time of trial was $73,542.84. Abby is an exceptional teacher and is great with children. Her peers and acquaintances described her as a nurturing and positive role model for children.

During the marriage, the parties made a good team when it came to parenting. The children are involved in numerous extracurricular activities, which both parents have been highly involved in. Jake sometimes misses out on the children's extracurricular activities due to his frequent travel. Both parties are unquestionably loving and devoted parents. However, due to Jake's work obligations, Abby has necessarily carried a somewhat heavier load of the day-to-day and behind-the-scenes parenting responsibilities while Jake is away. Prior to the parties' separation, Abby's parents were also frequently relied upon to assist with providing transportation for the children.

The parties separated and Jake moved out of the family home in June 2018. Upon their separation, the parties agreed they would have equal parenting time with the children. Abby testified she only agreed to the two-day, two-day, three-day parenting schedule because it was the only way Jake would vacate the marital home. This schedule alternates so that the children are with Abby on Monday and Tuesday one week and with Jake on Monday and Tuesday of the next week, and so forth. Jake testified the arrangement has generally gone well, although he agreed the children have experienced difficulties with transitioning between the parents. Abby disagreed the arrangement has gone well, complaining she and the children are required to adapt to Jake's schedule and the alternating schedule makes maintaining routines more difficult. While the parties agreed to an alternating two-day, two-day, three-day schedule, Abby testified it has not been

followed due to Jake's work obligations. Instead, the parties generally develop a monthly plan before each month based off of Jake's anticipated work schedule. Generally, the circumstances required Abby and the children to adapt to Jake's work schedule when there is a schedule conflict. Despite the transitional and scheduling issues, as the district court noted, the parties "have done an admirable job of communicating about the children's needs and activities."

Jake filed his petition for dissolution of marriage in July. The matter proceeded to trial in February 2019. The disputed issues included physical care, spousal support, and division of the parties' assets. The court ultimately awarded the parties joint legal custody. The court placed the children in Abby's physical care with extraordinary visitation to Jake. The court reasoned, given Jake's work schedule and frequent fluctuations in the parenting schedule, a joint-physical-care arrangement would be too disruptive for the children. As to visitation, the court awarded Jake three overnights every other weekend and one mid-week overnight per week.[3] The parties were awarded essentially equal amounts of the marital estate. The court ordered that Abby's Iowa Public Employees' Retirement System (IPERS) pension be divided by way of a qualified domestic relations order (QDRO) and Jake be named the contingent annuitant for fifty percent of Abby's post-retirement death benefit and the beneficiary for one-hundred percent of Abby's pre-retirement death benefit. As to spousal support, upon its understanding that Jake agreed to the same, the court awarded Abby $1000.00 in transitional spousal support per month for five years.

---

[3] As to child support, the court awarded Jake a fifteen percent extraordinary visitation credit. *See* Iowa Ct. R. 9.9.

Both parties filed motions to reconsider, enlarge, or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). Jake requested, among other things, that the physical-care arrangement be modified to shared care or he be granted additional visitation, a right-of-first-refusal provision be added to allow him the first opportunity to care for the children when Abby is unable to do so during her parenting time, and his spousal-support obligation be eliminated in light of physical care being awarded to Abby. None of the issues raised in Abby's motion are germane to this appeal. Following an unreported hearing, the court largely denied Jake's motion. Relevant to the issues raised in this appeal, the court modified Jake's spousal-support obligation to $350.00 per month for thirty months. Both parties appeal.

## II. Standard of Review

Appellate review of dissolution proceedings is de novo. Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *Fennelly*, 737 N.W.2d at 100. Because the court bases its decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009). As to child custody, our principal consideration is the best interests of the children. Iowa R. App. P. 6.904(3)(o); *see In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## III. Analysis

### A. Physical Care

Jake challenges the district court's decision to place the children in Abby's physical care rather than in the parties' shared care. Where, as here,

> joint legal custody is awarded to both parents, the court may award joint physical care to both joint custodial parents upon the request of either parent. . . . If the court denies the request for joint physical care, the determination shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child.

Iowa Code § 598.41(5)(a) (2018). "'Physical care' means the right and responsibility to maintain a home for the minor child[ren] and provide for the routine care of the child[ren]." *Id.* § 598.1(7). Under a joint-physical-care arrangement, "both parents have rights and responsibilities toward the child[ren] including but not limited to shared parenting time with the child[ren], maintaining homes for the child[ren], providing routine care for the child[ren] and under which neither parent has physical care rights superior to those of the other parent." *Id.* § 598.1(4). Physical-care determinations are based on the best interest of *children*, not "upon perceived fairness to the *spouses.*" *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

We consider the following nonexclusive factors in determining whether a joint-physical-care arrangement is in the best interests of children:

> (1) "approximation"—what has been the historical care giving arrangement for the child[ren] between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99).

We first consider approximation. The district court expressly concluded each parent would be a suitable physical custodian for the children. We agree. Under such a circumstance, stability and continuity of caregiving are primary factors in considering whether joint physical care should be ordered. *Hansen*, 733 N.W.2d at 696. The evidence is clear that the parties' parenting of the children has been a team effort. "[L]ong term, successful, joint care is a significant factor in considering the viability of joint physical care after" dissolution. *Id.* at 697. That being said, Jake's frequent travel has necessarily placed more of the day-to-day and behind-the-scenes parenting responsibilities on Abby. On the other hand, the evidence is clear that Jake is a highly engaged parent when he is not away on business. Given the circumstances of this case, we do not find the approximation factor to be predominant. At the end of the day, "both parents have actively cared for the child[ren] before and since the separation." Iowa Code § 598.41(3)(d).

We turn to the parties' ability to communicate and show mutual respect and the degree of conflict between them. *Hansen*, 733 N.W.2d at 698. We agree with the district court that the parents, despite the circumstances of their separation, "have done an admirable job of communicating about the children's needs and activities." We also agree with the court's statement from the bench following trial:

> I wanted to tell both of you that I think you've handled a very stressful situation very well, the two of you have, and I want to compliment you on that. As you can imagine, we see lots of people going through divorces, and we see lots of ways they deal with each other and with the children, and, for the most part, it appears to me that you have done exactly what we hope people do, try to keep children out of the middle for the most part, try to deal with each other civilly and professionally. . . . You're both obviously good parents, so I want to compliment you on that.

Simply stated, there is no reason to conclude the parties' ability to communicate or show mutual respect or the degree of conflict would be impediments to a joint-physical-care arrangement. As to the final factor, "the degree to which the parents are in general agreement about their approach to daily matters," *id.* at 699, we find no evidence in the record that the parents harbor diverse child-rearing philosophies.

As the district court alluded to, consideration of the *Hansen* factors results in a conclusion that a joint-physical-care arrangement would be workable.[4] But the *Hansen* factors are non-exclusive, and the overarching inquiry is whether such an arrangement would be in the children's best interests. *See id.* at 699–700. Jake's testimony acknowledged the children struggled a little with the frequent mid-week housing transitions, but insisted the children were adjusting and doing well. Abby testified she did not think the children were handling the changing routines very well and insisted they needed a more stable arrangement that did not alternate and change to accommodate Jake's schedule. The district court concluded Jake's frequent travel and the parenting schedule he requested to accommodate his work schedule would be too disruptive for the children, especially given the fact that the agreed-upon temporary schedule, which Jake requested be adopted as part of the dissolution decree, was too unstable and required Abby and the children to adapt to Jake's work schedule. The district court reasoned:

---

[4] The court noted: "As to the factors for shared care, the parties live in close geographic proximity and communicate extraordinarily well. They show mutual respect, and there is little conflict between them. They appear to be in general agreement in their approach to daily child care matters."

> The Court credits the testimony that [the parties' son] is angry and sad over the divorce. His relationship with Jacob is somewhat strained at this point. A 2-2-3 schedule is quite disruptive to the children's lives and schedules, especially when even this schedule is in flux week-to-week due to Jacob's travel. [The parties' daughter] struggles somewhat in school and stability is essential for her. Abby is an extremely organized parent and can best meet this need. While some of these issues could be overcome, the Court finds that Jacob's travel schedule, together with these concerns, dictate the children be placed in Abby's primary physical care.

Although the district court did not make specific credibility findings, in deciding what arrangement is in the best interests of the children, the foregoing quote clearly demonstrates the court considered Abby's testimony concerning the children's needs and their responses to the 2-2-3 schedule, and how weekly alternating of the days the children were with each parent adversely affected daily and weekly routines, to be more credible than Jake's testimony.

We could conclude from reviewing only the paper record before us that the schedule was not really that unstable, at least while Abby was keeping track of who was exercising parenting time from July 2018 to early January 2019. There were very few major deviations from the arrangement. And, a joint-care arrangement involving equal time with each of these suitable and devoted parents could "assure the child[ren] the opportunity for the maximum continuing physical and emotional contact with both parents" and could "encourage the parents to share the rights and responsibilities of raising the child[ren]," which is in the children's best interests. *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996); *accord* Iowa Code § 598.41(1)(a); *In re Marriage of Gensley*, 777 N.W.2d 705, 714 (Iowa Ct. App. 2009) ("The district court shall make an award

that . . . assures the children the 'opportunity for the maximum continuing physical and emotional contact with both parents." (citation omitted)).

> While we might have made different findings had we been the trier of fact, the district court heard the witnesses, and we did not. Since this particular case turns largely on the relative credibility of [Jake and Abby], and more generally on their trustworthiness, we defer to the district court's findings

and agree with its conclusions. *In re Marriage of Zogg-Kellett*, No. 09-0652, 2010 WL 625023, at *4 (Iowa Ct. App. Feb. 4, 2010). We agree with the district court's concerns that joint physical care would require Abby and the children to periodically accommodate Jake's work schedule and that Jake was seeking to trade time he would miss due to work obligations. And as required by section 598.41(5)(a), our focus remains on the best interests of the children, not accommodations for Jake.

"In determining which parent serves the child[ren]'s best interests, the objective is to place the child[ren] in an environment most likely to bring the child[ren] to healthy physical, mental, and social maturity." *In re Marriage of Courtade*, 560 N.W.2d 36, 38 (Iowa Ct. App. 1996). "Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development." *In re Marriage of Winter*, 233 N.W.2d 165, 167 (Iowa 1974). Upon our de novo review of the record and consideration of the *Hansen* factors and other relevant matters,[5] we agree with the district court that

---

[5] "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)." *Courtade*, 560 N.W.2d at 37 . "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining"

placing these children in Abby's physical care best serves their interests and specifically find and conclude a joint physical care arrangement would not be in the best interests of the children. While we agree both parents are model ones, and the lack of displayed animosity between them would foster a shared-care arrangement, at the end of the day, we find placement in Abby's physical care is most likely to bring the children to healthy physical, mental, and social maturity.

B.      Visitation

Jake alternatively requests an increase in his visitation. The court awarded Jake three overnights every other weekend and one mid-week overnight per week. He argues the court should have also afforded him "Thursday before weekends when he does not have the children in his care."

"A noncustodial parent should be awarded liberal visitation in order to afford the children the opportunity to maximize continuing physical and emotional contact with both parents." *In re Marriage of Farrell*, 481 N.W.2d 528, 531 (Iowa Ct. App. 1991); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best

---

physical care. *Hansen*, 733 N.W.2d at 696. We note our consideration of whether each parent would be a suitable custodian, whether the children will suffer due to lack of active contact with and attention from both parents, whether the parents can effectively communicate about the children's needs, whether both parents have actively cared for the children, whether each parent can support the other's relationship with the children, whether one or both parents agree to or oppose shared physical care, and the geographic proximity of the parents. *See* Iowa Code § 598.41(3)(a)–(e), (g), (h). We also note our consideration of the characteristics of the children and parents, the children's needs and the parents' capacity and interests in meeting the same, the relationships between the parents and children, the effect of continuing or disrupting an existing physical-care arrangement, the nature of each proposed environment, and any other relevant matter disclosed by the evidence. *See Winter*, 223 N.W.2d at 166–67.

interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994).

Upon our de novo review of the record, we are not convinced increasing Jake's visitation would be in the best interests of the children. In light of his busy work schedule, we find the district court's visitation schedule promotes the goal espoused by section 598.41(1)(a). The schedule provides Jake with liberal visitation and is not unreasonable.[6] Additionally, under the decree, the parties are free to agree to additional visitation beyond the minimum amount. We affirm the visitation schedule decreed by the district court.

C.      Right of First Refusal

In his motion to reconsider, enlarge, or amend, Jake requested that a right-of-first-refusal provision be added to the decree allow him the first opportunity to care for the children when Abby is unable to do so during her parenting time. The court denied that part of his motion. On appeal, Jake asks for a right of first refusal to care for the children in the event Abby is unavailable to do so for twelve or more hours. Abby acknowledges case law supports such a right for Jake but goes on to argue it is unwarranted in this case, despite being "agreeable" in the district court to such a provision. We disagree such a provision is inappropriate. We modify the decree to provide Jake with a right of first refusal to care for the children in the event Abby is unable to do so for twelve or more hours. Absent an emergency situation, Abby shall provide Jake with twenty-four hours' notice of such

---

[6] *Cf. In re Marriage of Gulsvig*, 498 N.W.2d 725, 726–72 (Iowa Ct. App. 1993); *In re Marriage of Stepp*, 485 N.W.2d 846, 850 (Iowa Ct. App. 1992); *In re Marriage of Drury*, 475 N.W.2d 668, 671 (Iowa Ct. App. 1991); *In re Marriage of Lacaeyse*, 461 N.W.2d 475, 477 (Iowa Ct. App. 1990).

opportunity, and Jake shall respond within six hours. If Jake does not timely respond, his right of first refusal shall be deemed waived.

D.    Spousal Support

At trial, Jake specifically testified to his agreement that "Abby has some need for spousal support for some period of time." He also agreed, "I think a thousand dollars a month from me in spousal support would be fair." He proposed paying said amount for "5 years." He later testified he did not believe Abby would need an award of spousal support if she was granted physical care of the children because she would be receiving a large amount of child support. Abby requested an award of transitional alimony in the amount of $1000.00 to $2000.00 until the children graduated from high school, seven years.

The court, upon its understanding that Jake agreed to the same, awarded Abby $1000.00 in transitional spousal support[7] per month for five years. In Jake's motion to reconsider, enlarge, or amend, he requested the spousal support award be eliminated given the court's physical-care decision. The court reduced the award to $350.00 per month for thirty months.

Both parties challenge the court's spousal support award. Jake agreed below that he should pay spousal support in the event the parties were awarded

---

[7] Transitional spousal support has been described to apply:

> where the recipient spouse may already have the capacity for self-support at the time of dissolution but needs short-term assistance in transitioning from married status to single status due to the economic and situational consequences of dissolution. The critical consideration is whether the recipient party has sufficient income and/or liquid assets to transition from married life to single life without undue hardship.

*In re Marriage of Hansen*, No. 17-0889, 2018 WL 4922992, at *17 (Iowa Ct. App. Oct. 10, 2018) (McDonald, J., concurring specially).

joint physical care of the children. While Abby argues the original award should have been for seven years or life, she agrees "the court's original award of $1,000.00 per month for sixty . . . months is not out of line."

Courts may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following factors:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
> (f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
> (g) The tax consequences to each party.
> . . . .
> (j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

Having considered the foregoing factors, we conclude Abby will suffer financial hardship transitioning to single life and needs short-term assistance due to the economic and situational consequences of dissolution and an award of spousal support is appropriate. But we find the district court's award inadequate. We modify the decree to award Abby spousal support in the amount of $650.00 per month for three years from the time of the entry of the decree.

E.     Retirement Benefits

Finally, Abby challenges the award of a portion of her pre- and post-retirement death benefits to Jake as inequitable.  During trial, Jake testified that he and Abby had agreed to divide her IPERS account by using a QDRO and he submitted to the court his proposed language, which included listing him as "surviving spouse for pre-retirement benefits as well as post-retirement."  Abby testified that she agreed her IPERS was to be divided by a QDRO.  Her IPERS benefits statement was also submitted to the court and included an explanation concerning death benefits and possible effects of a QDRO and a beneficiary designation.  She offered no testimony concerning pre-retirement benefits or post-retirement benefits.  Nor did she challenge any of the proposed terms set forth in Jake's proposed language.

In the court's decree, it awarded the IPERS account through entry of "a QDRO containing the terms and conditions outlined in" Jakes exhibit containing his proposed language.  In her motion to reconsider, enlarge, or amend pursuant to rule 1.904(2), Abby did not object to the court's treatment of the IPERS account or offer any argument or claim the court's disposition of IPERS was inequitable.  Based on the record made before the district court, we cannot say the court failed to do equity as to the IPERS distribution.

F.     Child Support

Our modification of the spousal-support award of the decree necessitates a recalculation of child support.  As neither party has applied for a stay of the decree pending appeal, *see* Iowa R. App. P. 6.604, we assume the parties have been following the physical-care arrangement and abiding by the child- and spousal-

support obligations imposed by the district court. Given Jake's promotion shortly before trial, his highly fluctuating income in recent years, and the uncertainty of Jake's annual bonus, we remand the matter to the district court for determination of past and future child-support obligations following procedendo. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015) (noting child-support obligations should be "based on the present financial circumstances of the parties"); *In re Marriage of Smiley*, 518 N.W.2d 376, 380 (Iowa 1994). The past award should factor in the retroactive modification of Jake's spousal-support obligation. The future award should also reflect said modification and consider the parties' current incomes.

## IV.     Conclusion

We affirm the district court's physical-care decision and its visitation schedule. We modify the decree to provide Jake with a right of first refusal to care for the children in the event Abby is unable to do so for twelve or more hours. We further modify the decree to award Abby spousal support in the amount of $650.00 per month for three years from the time of the entry of the decree. Based on the record made before the district court, we cannot say the court failed to do equity as to the IPERS distribution. Given the modification in spousal support, we remand the matter to the district court for a recalculation of child support. Costs on appeal are assessed to Jake.

**AFFIRMED AS MODIFIED ON BOTH APPEALS AND REMANDED.**