# IN THE COURT OF APPEALS OF IOWA

No. 24-0150
Filed May 7, 2025

IN RE THE MARRIAGE OF TEMESHIA R. JACOBS
AND DAVID C. JACOBS

Upon the Petition of
**TEMESHIA R. JACOBS, n/k/a TEMESHIA R. BOMATO,**
    Petitioner-Appellee,

**And Concerning**
**DAVID C. JACOBS,**
    Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg,

Judge.


        David Jacobs appeals an order modifying the decree dissolving his

marriage to Temeshia Bomato. **AFFIRMED.**


        Elizabeth Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des

Moines, for appellant.

        Cathleen J. Siebrecht of Siebrecht Law Firm, Pleasant Hill, for appellee.


        Considered without oral argument by Tabor, C.J., and Schumacher and

Chicchelly, JJ.

**SCHUMACHER, Judge.**

David Jacobs appeals an order modifying the legal-custody and physical-care provisions of the decree dissolving his marriage to Temeshia Bomato. He claims the district court erred in granting Temeshia's request for sole legal custody and physical care of the parties' child. He also challenges the summer-visitation provisions of the parties' decree. Upon our review, we affirm the district court's modification order and decline to award appellate attorney fees.

## I.      Background Facts and Proceedings

David and Temeshia married in 2016. Their child, I.J., was born that same year. Temeshia petitioned for dissolution of the marriage in 2019. In August 2021, the parties reached a stipulation on all issues, and the court entered a dissolution decree adopting their agreement for joint legal custody and shared physical care.

Less than five months later, David filed a modification petition. He requested physical care of the parties' child. Temeshia counterclaimed seeking sole legal custody and physical care of the child.

Discovery disputes followed, as well as multiple contempt applications. David filed an application for immediate drug testing, which Temeshia resisted—noting she is "a legal medical cannabidiol cardholder"—and the court later denied David's request. David also filed an application for appointment of a custody evaluator, which Temeshia also resisted. The district court denied the application, noting Susan Gauger had performed a custody evaluation "within the past two years" during the parties' dissolution proceeding, which had "recommended granting primary care to David." Temeshia filed a motion in limine seeking to

exclude testimony from Gauger. The court reserved ruling on Temeshia's motion for trial.

Trial took place over three days in August and November 2023. David mainly represented himself at trial,[1] and Temeshia appeared with her attorney. Both parties were employed, and they lived near each other in Urbandale.[2] Temeshia was married and had a one-year-old child with her new husband. She also had two older children who lived with the family. Aside from Temeshia and David disagreeing on nearly every topic relating to I.J.—ranging from whether the child should take melatonin to what preschool she should attend—they described I.J. as happy, intelligent, and on track developmentally. The parties' testimony essentially emphasized their own positive characteristics and attempted to paint the other in a bad light.

The court also heard testimony from a Johnston police officer, an Urbandale police officer, a private investigator David hired to conduct surveillance on Temeshia, and two of Temeshia's friends. Gauger did not testify, and the court denied admission of her 2020 custody evaluation because it "predated the decree of dissolution." Instead, the court allowed David to depose Gauger, and her deposition was entered into evidence.[3]

---

[1] David shuffled through several attorneys throughout this proceeding. He represented himself the first two days of trial. On the last day, he appeared with an attorney.

[2] David moved several times after the dissolution, including to a place that "was filled with rats, mice, and cockroaches," before he moved to his current condo.

[3] Gauger acknowledged she did not "know what has happened or what has transpired since" her initial evaluation. At that time, she had opined the parties had a "toxic" and "extremely dysfunctional" relationship; her main concerns and reasons to recommend David as a primary caretaker were Temeshia's ability to support David's relationship with I.J. and that it was Temeshia's "way or the

Ultimately, the district court determined "the conditions since the decree was entered have so materially and substantially changed" such that a modification of legal custody was warranted. The court found the parties "have been in nearly constant conflict with one another since the time of the Decree of Dissolution." The court found I.J. was "caught in the middle of this conflict" and had "no doubt suffered by not receiving consistent parenting and health care whether it be physical or emotional care by a therapist." The court concluded that the child needed to have a primary decisionmaker and, between the parties, Temeshia demonstrated a superior ability to administer to the child's medical, emotional, and developmental needs.

Accordingly, the court modified the decree to place sole legal custody and physical care with Temeshia. The court ordered David to have reasonable and liberal parenting time "as agreed upon by the parties," but minimally every Wednesday after school to Thursday morning and every other weekend from Friday after school to Monday morning. The court preserved the parties' stipulated schedule for holidays, special days, and school breaks "as set out in the original decree." David appeals.

## II.   Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but

---

highway." She acknowledged "there may be things that have changed or not changed" since her evaluation.

we are not bound by them.  Iowa R. App. P. 6.904(3)(g).  The best interest of the child is our primary consideration.  Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

### III.    Legal Custody

David claims the court erred in modifying legal custody from joint to sole legal custody in favor of Temeshia.  According to David,

> [T]here has not been a substantial change in circumstances that would justify an award of sole legal custody.  Temeshia has not proven by clear and convincing evidence that David is not capable of making decisions with Temeshia with regard to I.J.'s care.  To the contrary, his attempts to discuss legal custody issues have been met with hostility and a refusal to communicate.  Moreover, the parties' original stipulation already contains very detailed methods regarding how legal custody disputes should be resolved.

In short, David argues the hostility, communication, and respect issues between the parties are not to the level that would warrant modification of legal custody.

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of the evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change."  *In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992).  "The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children."  *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted).

Arguably, the parties do not dispute that a material and substantial change in circumstances has occurred since the decree warranted modification.  Indeed, David initiated this modification action, and he persisted as such during trial.  *See*

*In re Marriage of Mau*, No. 24-0100, 2024 WL 4966113, at *3 (Iowa Ct. App. Dec. 4, 2024) ("The district court's finding that a material and substantial change took place is uncontested by these parties."). And Temeshia alleged the same in her answer and counterclaim. In any event, based on the record before us—which is replete with police reports; a no-contact order; accusations to the Iowa Department of Health and Human Services; unfounded allegations of sexual abuse and illicit drug use; disagreements relating to the child's medical care and need for therapy; disparaging comments on social media; and other damaging communications— we agree with the district court's finding that "the parties are no longer able to coparent in any meaningful sense." *See id.* (citing *In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996)).

Joint custody arrangements between "parents who demonstrate they are able to put aside their differences for the sake of their [child]" should generally be maintained. *Harris*, 877 N.W.2d at 440. "On the other hand, modification is generally appropriate when shared custody provisions incorporated into the decree have not evolved as envisioned by either of the parties or the court or when the parents simply cannot cooperate or communicate in dealing with their children." *In re Marriage of Beasley*, No. 21-1986, 2022 WL 16985437, at *7 (Iowa Ct. App. Nov. 17, 2022) (cleaned up). As the parties both acknowledge, the custody provisions of the decree contemplated their ability to maintain coparenting duties and responsibilities. Although the court was "apparently hopeful that the parties were capable of cooperating in those matters affecting the best interests of their child[]," "[i]t is now quite clear that this is not the case." *Id.* (quoting *Rolek*, 555 N.W.2d at 677).

We decline to recount and parse the parties' lengthy trial testimony in which they challenged nearly every aspect of the other's personal life and parenting capacities. The district court found, and we agree, both "have acted inappropriately toward one another." Neither has been an effective coparent. As Gauger stated, "I think there is going to be continual conflict between these two until the child is emancipated and makes her own decisions just because of the[se] parents." "When, following a dissolution decree providing joint custody, the actions of the parties indicate that they are no longer able to cooperate, a modification of the custody status is appropriate." *Rolek*, 555 N.W.2d at 677.

David maintains, "In the event the Court finds joint legal custody is no longer appropriate, [he] should be awarded sole legal custody." To the extent he argues he met his burden to show a superior ability to minister to the child's needs, we disagree. The district court noted, and the record shows, that Temeshia has been "quite successful in improving her life and the lives of her husband and children." Although we agree with David that some of the factors listed in Iowa Code section 598.41(3) (2021) lean in his favor, our review of the parties' respective support for the other's relationship with the child and overall ability to communicate lead us to concur with the district court's finding that Temeshia has shown she is the superior parent.[4] And we give such deference to the district court's credibility determinations because the district court had a front-row seat to the live testimony,

---

[4] At the time of trial, a no-contact order was in place, with David as the protected party after Temeshia pled guilty to harassment, occurring in December 2021, approximately four months after the original decree was entered. The no-contact order is in place until 2027, and the parents may only communicate through a parenting app.

whereas we are limited to a cold record. *Higdon v. Rana*, 14 N.W.3d 384 (Iowa Ct. App. 2024).

In short, many of David's actions lead us to the conclusion that he is more interested in proving Temeshia is an unsuitable parent[5] than he is in working together with Temeshia to "rais[e] the child into a healthy, content, and well-adjusted young adult." *See In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). We conclude Temeshia met her burden to show a substantial change in circumstances and a superior parenting ability, and we affirm the district court's decision to modify the legal-custody provisions of the parties' dissolution decree.

## IV. Physical Care

David also claims the district court erred in "transferring primary physical care" to Temeshia. But because we have affirmed modification of legal custody to sole legal custody in favor of Temeshia, "we need not address the court's modification away from joint physical care, as such an arrangement is only authorized when coupled with joint legal custody." *Beasley*, 2022 WL 16985437, at *8 (citing Iowa Code § 598.41(5)(a)); *see, e.g.*, *In re Marriage of Gensley*, 777 N.W.2d 705, 717 n.7 (Iowa Ct. App. 2009)); *see also In re Marriage of Cowger*, No. 22-1254, 2023 WL 6620127, at *3 (Iowa Ct. App. Oct. 11, 2023) ("Because

---

[5] For example, David hired a private investigator to conduct surveillance on Temeshia. The investigator testified he observed Temeshia between March and May 2022. When asked if he "observed anything inappropriate" during that time, he responded, "Other than smoking, I guess, no." He further agreed he sees people "smok[ing] in their vehicles during a break" "on a regular basis."

Leslie was awarded sole legal custody, a joint-physical-care arrangement is not an option.").

## V.    Summer Visitation

Finally, David argues that specifically relating to summer visitation, the "parenting schedule is not in the child's best interest."[6]  In the modification ruling, the court ordered the "[s]ummer break schedule shall remain as set out in the original Decree of Dissolution."  The decree provided:

> Beginning in Summer 2022, each party shall be entitled to take two (2) one-week (7 days) periods of uninterrupted visitation during the Summer Break from school.  The two (2) week-long periods of uninterrupted visitation shall not be exercised consecutively. Summer break visitation shall not include the other parent's holiday visitation or regularly scheduled weekend with the minor child. However, the parties may agree to exercise their summer visitation in one period of two week increments upon mutual agreement, in writing.

The summer visitation schedule was stipulated to by the parties in conjunction with their shared physical care arrangement.  We observe this provision more concerns the parties' "uninterrupted visitation" periods rather than their only parenting time with the child.  On appeal, David claims, "In the event [he] is not awarded primary physical care, he should be entitled to expanded parenting time in the summer to include alternating weeks from Sunday until Sunday or, in the alternative, to award him a minimum of 4 weeks each summer."

---

[6] Temeshia responds that David failed to preserve error on this claim.  We disagree.  At trial, David stated:
> [S]ince [I.J.] wants to do all these camps, I think a week on/week off in the summer would be a perfect fit for [I.J.].  That way I could put her in camps when she wants to do camps, and then—and she's able to do those things that she wants to do.

Because this issue was raised before and addressed by the district court, error was preserved.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

"Liberal visitation rights are in the best interests of the children," and children "should be assured the opportunity for the maximum continuing physical and emotional contact with *both* parents." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *Brainard*, 523 N.W.2d at 615.

Overall, we find David's current visitation schedule serves the best interests of the child, allowing her to have meaningful time with each parent. We further find the stability in the current visitation schedule to be in the best interests of the child. *See In re Marriage of Morrison*, No. 16-0886, 2017 WL 936152, at *5 (Iowa Ct. App. Mar. 8, 2017). And as the district court noted, this visitation schedule is a baseline. It may be altered if David and Temeshia can agree. *See Cowger*, 2023 WL 6620127, at *5.

## VI. Appellate Attorney Fees

Temeshia requests an award of $5000 in appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within the appellate court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). The court considers "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In consideration of these factors, we decline to award appellate attorney fees.

**VII.    Conclusion**

We affirm the district court's modification order.  Costs on appeal are taxed to David.

**AFFIRMED.**