**IN THE COURT OF APPEALS OF IOWA**

No. 24-1879
Filed October 29, 2025


**JAVONTE DEVAR HINES-MILLER,**
    Plaintiff-Appellee,

**vs.**

**ASHLEA KAY TETER,**
    Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Boone County,
Christopher C. Polking, Judge.


        Ashlea Teter appeals the denial of her petition to modify the physical care
provisions of the decree establishing custody of the child she shares with Javonte
Hines-Miller. **AFFIRMED.**


        Thomas L. Hillers (argued) of Hillers Legal, P.C., State Center, for appellant.

        Jason Springer (argued) of Springer Law Firm, PLLC, Madrid, for appellee.


        Heard at oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**CHICCHELLY, Judge.**

Ashlea Teter appeals the denial of her second petition to modify the physical care provisions of the decree resolving issues of child custody, support, and visitation of the child she shares with Javonte Hines-Miller. She contends the court erred by declining to transfer physical care of the child to her after finding that Javonte has a history of domestic violence. Because Ashlea failed to meet her burden of showing that she can offer superior parenting, we must affirm.

## I. Background Facts and Proceedings.

This action concerns one child that Ashlea and Javonte share: K.A.M., who was born in 2016. Ashlea has two older children: an eleven-year-old daughter who lives with her and a nine-year-old son who is in her care every other weekend. They live in Boone with Ashlea's fiancée and his six-year-old son. Javonte lives in Ames with his wife and their two daughters.

### A. Custody Decree

In January 2020, the district court entered a decree establishing K.A.M.'s paternity, custody, visitation, and support. The court found each party was a suitable caretaker and granted joint legal custody, but it found that Javonte was the child's primary caretaker and more attentive to the child's needs. Although the court acknowledged the hostility between the parties and their need to improve communication, it found that Javonte did a better job of supporting the child's relationship with the other parent.

Before determining physical care of the child, the district court cited its concerns about three incidents of domestic abuse involving Javonte. The first incident occurred in 2012, when Javonte was still in high school, and involved his

then-girlfriend. As the court found, the incident "involved no direct physical assault," and Javonte was convicted of disorderly conduct rather than domestic abuse assault. As a result, Javonte took an eight-hour assault behavior class.

The second incident occurred in 2015 during an argument between Javonte and Ashlea. Javonte claimed that both he and Ashlea "got physical," and Javonte was charged with a felony. The charge was dismissed because Ashlea signed an affidavit stating that nothing happened, she was unharmed and unafraid, and the charge was unfair. But at the custody trial, Ashlea testified that Javonte pushed her to the floor, pushed her over a couch, strangled her, and threw her to the ground. Ashlea claimed she signed the affidavit because Javonte pressured her. Though the court found that Ashlea's description of the event was "troubling," it noted that Ashlea lied either in her sworn statement or at trial. It also found that both parties "seemed to try to exaggerate the negative incidents of the other party."

The third incident occurred in 2016 while K.A.M. was present. Javonte claimed that he tried to leave with K.A.M., but Ashlea blocked him and spit in his face. Javonte responded by "head butt[ing]" Ashlea. The State filed criminal charges against Javonte, who pled guilty to domestic abuse assault and completed twenty-six weeks of batterer's education. He was granted a deferred judgment, and his conviction was expunged.

The district court noted that there were no incidents of assault involving Javonte after he completed batterer's education for the 2016 assault. As a result, the court found that the presumption against awarding Javonte custody had been rebutted. The court then concluded that Javonte "otherwise seems best suited to

meet the long-term best interests of the child" and placed K.A.M. in his physical care.

### B. First Modification Action

In June 2021, less than eighteen months after its entry, Ashlea petitioned to modify the physical care provisions of the decree. She alleged a substantial change of circumstances based on an incident that occurred in May 2020 between Javonte and an ex-girlfriend. As a result, Javonte pled guilty to domestic abuse assault causing bodily injury and stalking in violation of a no-contact order in November 2020. Javonte received a suspended sentence. The court deemed the incident "troubling" but found it was isolated and did not constitute a substantial change in circumstances because "K.A.M. was not present during this incident and there was no evidence that this situation affected him in any way."

Ashlea also alleged that Javonte failed to support and interfered with her relationship with K.A.M. She cited Javonte's failure to provide her with the child's soccer schedule or contact information for his school. Javonte disputed Ashlea's claim and presented testimony from two witnesses who were present during phone conversations between Javonte and Ashlea. Although the court did not find the parties "particularly credible during their testimony," it found that Javonte's witnesses were credible. It also noted testimony regarding unfounded reports Ashlea made to the Iowa Department of Health and Human Services regarding Javonte, which lent credibility to his claim that Ashlea was trying to create situations to use against him in court. The court found insufficient evidence to support Ashlea's claim that Javonte tried to interfere with her relationship with the

child. The court further found that although both parties could do a better job of communicating, their issues did not have a disruptive effect on the child.

The court considered the circumstances Ashlea claimed individually, as well as their combined effect, and found they did not amount to a substantial change in circumstances that warranted modifying the custody decree.

> Furthermore, the Court cannot find the child will receive superior care from Ashlea vis-a-vis the current custodial arrangement. Javonte continues to be employed, is financially stable, lives in a three bedroom townhome and although he appears to rely significantly on others to help with K.A.M, all of the child's needs are currently being met. K.A.M. does well in school and is involved in extracurricular activities. He is described by both parties as a very happy child. Both parents appear to be loving and supportive parents.

The court denied Ashlea's 2021 petition.

### C. Second Modification Action

Ashlea petitioned to modify the custody decree again in February 2023, citing criminal charges filed after a January 2023 altercation between Javonte and his now-wife,[1] who was injured when he tried to remove the engagement ring from her finger. K.A.M. was not in the home when the event occurred, but Javonte's two other children witnessed at least part of the incident. The criminal complaint also alleged that Javonte pulled his now-wife by her hair, got on top of her, and strangled her with both hands. At the modification trial, Javonte's now-wife denied that he strangled her, claiming that she lied to the police because she was mad at Javonte. After viewing the evidence, the court did not find her testimony credible. Javonte pled guilty to domestic abuse assault causing bodily injury, was placed on probation, and has since completed a batterer's education class.

---

[1] The two were engaged at the time. They married in July 2024.

Although Javonte's serial incidents of domestic abuse appeared as isolated incidents at the time they occurred, both the custody decree and first modification order expected that the behavior would not be repeated. Based on the 2023 incident, the court found a substantial change in circumstances had occurred. It also found that the incidents constitute a history of domestic abuse, creating a presumption against joint custody.

The court then turned to whether Ashlea can provide superior care. It found no evidence that Javonte's behavior has had a direct negative effect on K.A.M. The court acknowledged Ashlea's claim that K.A.M. has been aggressive when he is in her home. But K.A.M.'s latest report card did not indicate aggression was a problem at school, and the evidence did not show it is a problem when K.A.M. is in Javonte's home.

> The case presents a very difficult issue, particularly in the context of a modification action. The history of domestic abuse behavior of Javonte creates a presumption against joint custody, which he can rebut. There is also a heavy burden on Ashlea to show that she can offer superior parenting. Ashlea has had stable housing and employment for several years now, but so has Javonte. It appears from Ashlea's testimony that she would continue doing what Javonte has as far as schooling and extracurriculars like football. There is no indication from the evidence that one parent communicates better than the other or is more supportive or not supportive of the other parent's relationship. The relationship of the parents in co-parenting appears to have settled down into a lukewarm relationship with neutral visitation exchanges (which is better than many separated parents manage).
>
> In three trials now before the Court, Ashlea has focused on the flaws of Javonte. Not all of her complaints have been found credible. But as the movant in a modification action where she seeks a shift in physical care, she must also show that she is able to be a superior parent. Yet, the court relatively does not know much about her other than her employment and housing situation, and that she apparently aims to do the same things for K.A.M. as Javonte has. She has lived with her fiancé for four years, but the court knows nothing about him or what he has to offer to K.A.M. other than being

available for childcare on the nights that Ashlea works. There is a general paucity in the record of the positives that Ashlea is prepared to bring rather than the negatives she thinks Javonte has. She has another child of whom she does not have primary care, and the reason for that is unknown.

. . . .

Essentially, based on the record, the question appears to the court to be is Ashlea's lack of a history of domestic abuse enough to make her a superior parent at this time to Javonte? The court must conclude it is not, due to her heavy burden to show superior parenting, as this is the only factor in regard to which the court finds evidence that she would do better than Javonte. The heavy burden exists as the courts recognize there is a significant disruptive effect to a child if their care arrangement of several years is changed. While Javonte's history of domestic abuse is a significant concern even in the absence of proven exposure to K.A.M., the court does not have a clear idea of what parenting strengths Ashlea would otherwise bring that are not matched by what Javonte is doing.

The preponderance of the credible evidence is that K.A.M. is doing well and the court does not wish to interrupt that stability.

This is not to be taken in any way as a diminishment of the seriousness of the fact that Javonte has a history of domestic abuse. He must finally change his behavior. The existence of this history made this a terribly close case where it otherwise would not have been.

The court dismissed Ashlea's modification petition.

## II. Scope of Review.

We review matters of child custody de novo. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). On de novo review, we examine the entire record before us and decide anew the issues presented on appeal. *Id.* at 5. We give weight to the district court's factual findings, especially those involving witness credibility, but we are not bound by them. *Id.*

## III. Physical Care.

Before the court can modify child custody, the party seeking modification must show "by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best

interests make it expedient to make the requested change." *Id.* at 5 (citation omitted). The changed circumstances must not have been contemplated by the court when the decree was entered. *Id.* In addition, they must be "more or less permanent, not temporary," and relate to the child's welfare. *Id.* (citation omitted).

If the requirement of a substantial change in circumstances is met, the court then determines child custody. *Id.* Our primary concern in doing so is the child's best interests. *Id.* The goal is to place children in the environment that is most likely to foster physical and mental health, as well as social maturity. *Id.* at 7. Because physical care decisions "should be disturbed only for the most cogent reasons," a noncustodial parent must show an ability to minister more effectively to the child's wellbeing. *Id.* at 5 (citation omitted).

In fashioning an award of legal custody,[2] Iowa Code section 598.41(1)(a) requires that the court provide a child "maximum continuing physical and emotional contact with both parents" and "will encourage parents to share the rights and responsibilities of raising the child" unless doing so will cause harm. "[I]f the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint [legal] custody exists."[3] Iowa Code § 598.41(1)(b). Even though

---

[2] Because Ashlea and Javonte never married, this case is governed by chapter 600B (2023). But we apply the provisions of section 598.41 to custodial determinations made under chapter 600B. *See* Iowa Code § 600B.40(2).

[3] In chapter 598, the term "custody" is used interchangeably with "legal custody" to mean "an award of the rights of legal custody of a minor child to a parent under which a parent has legal custodial rights and responsibilities toward the child," such as "decision making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(3). The terms "joint custody" and "joint legal custody" mean that both parents have legal custodial rights and responsibilities toward the child and neither has rights superior to the other. *Id.* § 598.1(5). In contrast, the term "physical care" is used to describe the right and responsibility to maintain the child's home and provide for the child's

the statutory presumption does not apply here because Ashlea is not challenging legal custody, the court may consider a history of domestic abuse in determining which physical-care arrangement is in the child's best interest. *Id.* § 598.41(3)(j).

Although section 598.41(3) does not expressly state that the factors listed in that section apply to determinations of physical care, our case law states they are relevant in determining which physical-care arrangement is in the child's best interest. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) ("Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, we have held that the factors listed here as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child.").

> We have previously recognized domestic abuse as a factor in determining the custodial parent. This stems from the ravaging and long-term consequences of domestic abuse on children. A child who grows up in a home plagued with battering can, in many significant ways, be scarred for life. Thus, spousal abuse discloses a serious character flaw in the batterer, and an equally serious flaw in parenting. It also constitutes a crime. Consequently, we believe evidence of untreated domestic battering should be given considerable weight in determining the primary caretaker, and under some circumstances even foreclose an award of primary care to a spouse who batters. Domestic abuse is, in every respect, dramatically opposed to a child's best interests.

*In re Marriage of Daniels*, 568 N.W.2d 51, 54–55 (Iowa Ct. App. 1997) (internal citations and footnote omitted).

---

routine care. *Id.* § 598.1(7). And "joint physical care" means an award of physical care to both joint legal custodial parents under which both have rights and responsibilities toward the child, including shared parenting time, and maintaining homes for the child without either parent having physical care rights superior to the other parent. *Id.* § 598.1(4). Applying these definitions to section 598.41, the rebuttable presumption discussed in section 598.41(1)(b) pertains to the award of legal custody, not physical care.

Ashlea contends the district court erred by declining to modify physical care based on Javonte's history of domestic abuse. She claims that requiring evidence that a parent's history of domestic abuse directly impacts the child effectively nullifies the enactment of Iowa Code section 598.41(1)(b). But this argument ignores the fact that section 598.41(1)(b) only applies to legal custody determinations, and Ashlea did not seek modification of the decree's provisions granting the parties joint legal custody. Only physical care is at issue here.

As to physical care, Javonte's history of domestic violence is a factor, *see* Iowa Code § 598.41(3)(j), and it is factor that weighs heavily against Javonte. But we must still consider the larger picture in determining the child's physical-care placement. In deciding how much weight to give evidence of domestic abuse, we consider the nature of the abuse, the severity, whether it was repeated, and to whom it was directed. *In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997). Historically, we weigh a parent's history of domestic abuse most heavily in cases when it occurred in the child's presence. *In re Marriage of Grandinetti*, 342 N.W.2d 876, 879 (Iowa Ct. App. 1983). But we avoid elevating any single factor "to the point where it becomes the sole dispositive factor" as "a custody assessment demands judges look at both the affirmative and negative attributes of each parent and their plans for future care of the child[]." *In re Marriage of Shea*, No. 98-1396, 2000 WL 62941, at *2 (Iowa Ct. App. Jan. 26, 2000).

We turn then to the unique facts of this case. The record shows that K.A.M. is doing well in Javonte's care. K.A.M. has never been present during any acts of domestic violence. More importantly, there is no evidence that any of those acts of domestic violence have adversely affected him. The question, then, is whether

Ashlea met her burden by showing she can offer superior care. Unfortunately, her focus during the original custody action and both modification actions has been on Javonte's flaws rather than her abilities. As a result, the record showing the life that K.A.M. would receive in Ashlea's care is sparse compared to the evidence showing the life Javonte is providing. With no indication of what K.A.M.'s life looks like with Ashlea acting as physical caretaker, we have no way of determining whether a change would make things worse for K.A.M. by taking him from a home at which he is doing well and placing him in an unknown—and thus potentially inferior—setting. It was Ashlea's burden to remove that unknown and demonstrate her superior parenting ability, but she did not meet that burden.

We also emphasize that "[o]ur decision to affirm the district court's decision on the physical care issue could be accurately described as 'written in sand' rather than 'written in stone.'" *In re Marriage of Hager*, No. 00-1916, 2002 WL 531516, at *2 (Iowa Ct. App. Mar. 27, 2002). As the district court noted, the dearth of evidence makes this "a terribly close case where it otherwise would not have been." And we echo its caution that Javonte "must finally change his behavior." Our decision is not an endorsement of Javonte's actions and should not be interpreted as such. To the contrary, we abhor his actions. But the law places the burden of proof on Ashlea, so she must make some affirmative showing that her care is superior. Because she failed to present the necessary evidence to meet her burden, we must affirm.

**AFFIRMED.**

Ahlers, P.J., concurs; Sandy, J., dissents.

**SANDY, Judge** (dissenting).

The district court found that Javonte Hines-Miller strangled and committed other acts of domestic violence against his girlfriend in 2023—acts which, when considered alongside his past history of domestic abuse, establish a continuing pattern of behavior that shows no signs of change. In my view, Javonte's domestic violence presents a great enough threat to his child's safety and development that the basic display of stability presented by the child's mother, Ashlea Teter, demonstrates her superior ability to minister to the needs of the child.

Both our legislature[4] and courts have taken a strong stance against the scourge of domestic violence. Our supreme court has recognized that, even when the act of domestic violence was not committed against the child, "children living in a home with a batterer have a seventy percent chance of becoming the victim of abuse themselves. In addition, forty percent of suspected child abuse involves a history of family violence." *In re L.H.*, 904 N.W.2d 145, 153 (Iowa 2017) (cleaned up). These risks are elevated in homes where the abuser "refuses to meaningfully

---

[4] I find Iowa Code section 598.41 (2023) informative on this issue. Paragraph (1)(b) provides that "if the court finds that a history of domestic abuse exists, a rebuttable presumption against the awarding of joint custody exists," and paragraph (2)(c) further establishes that a domestic abuse finding "which is not rebutted, shall outweigh consideration of any other [best interests] factor." Iowa Code § 598.41(1)(b), (2)(c). Since we are deciding physical care rather than custody, section 598.41 arguably does not control the disposition in this case. But I fail to see how legal custody and physical care can be cogently separated in the context of 598.41's application. However, that is a question left for another day. Section 598.41 is useful for emphasizing our legislature's belief that domestic abuse profoundly threatens the child. And we do look to section 598.41 in physical care cases when deciding the child's best interests. *See In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). So I would argue that if the legisture does not trust a domestic abuser to choose their child's dentist, it certainly does not trust that same abuser to care for the child on a daily basis.

address the issues of abuse within the household." *See id.* at 154. That guidance is directly applicable to the facts of this case where Javonte has continued to engage in abuse the previous order did not contemplate and his victim recanted her accusations—which our supreme court has recognized is common among victims of domestic abuse. *See State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016).

Javonte has a history of domestic incidents dating back to 2012. I think it is worth emphasizing that every incident has escalated from the previous one. Following the 2012 incident, the court found no evidence of a "direct physical assault." Then, in 2015, Javonte and Ashlea "got physical." Next, Javonte "head butted" Ashlea in 2016. The three initial incidents were taken into consideration in the initial custody order, presumably under the belief that they would not continue. But in 2020, Javonte pleaded guilty to domestic assault causing bodily injury and stalking in relation to acts committed against his then-girlfriend. Now, Javonte is accused of having pulled his now-wife, Kaylee, by her hair, climbed on top of her, and then strangled her.

> The district court concluded that
>
> [e]ssentially, based on the record, the question appears to the court to be is Ashlea's lack of a history of domestic abuse enough to make her a superior parent at this time to Javonte? The court must conclude it is not, due to her heavy burden to show superior parenting, as this is the only factor in regard to which the court finds evidence that she would do better than Javonte.

The district court was correct in its framing of the issue. Indeed the question was, all other things being equal,[5] is Ashlea's lack of domestic abuse history enough to make her a superior parent? The answer is yes. Following the district court's finding of a history of domestic abuse, Ashlea's basic showing of stability satisfies her heavy burden to show that she can offer superior parenting. To find otherwise directly places the child in harm.

The notion that the child is not negatively affected because that child was not present for some of the domestic abuse incidents (of which there were five) and did not manifest negative effects from the violent assaults is troubling. In my opinion it fails to recognize the insidious effect of domestic abuse on families. And while domestic abuse is harmful to all members of the family unit, Javonte's escalating acts raise the question: when will the next one occur?

In *In re Marriage of Brainard* this court aptly addressed how a child who is raised in a home with a habitual batterer is impacted. 523 N.W.2d 611, 615 (Iowa Ct. App. 1994). "Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity and a greater likelihood for later problems in interpersonal relationships." *Id.* "Moreover, domestic abuse places children at a greater risk of being physically abused." *Id.* "It is estimated that child abuse is present in one-half of homes where spousal abuse is present." *Id.* at 615 n.2. "It is believed that about seventy percent of batterers grew up in violent homes." *Id.* "The history of family violence or abuse

---

[5] It is important to note that no allegation was made relative to Ashlea being an inappropriate caregiver.

is the most significant difference between delinquent and non delinquent youth." *Id.*

The *Brainard* court went on to observe that "[o]ur courts have previously recognized that violent tendencies of a parent adversely impact on the fitness of that parent to be the primary caretaker of a child." *Id.* at 615. "Similarly, we believe evidence of domestic abuse adversely reflects on the abusing spouse's ability to participate as a joint custodian." *Id.*

Javonte's home is an inappropriate primary residence for the child for no other reason than Javonte and Kaylee's inability to accept the reality of the situation. Although missing from the majority opinion, the district court concluded, "While [the child] was again not exposed to the most recent event, Javonte and Kaylee's two other children were. While they deny this, it is contradicted by what Kaylee told the police the next day, and the court finds the denials not credible, and unconvincing." During Kaylee's cross examination at the custody modification trial she doubled down and testified that Javonte did not strangle her and claimed she had lied to the police when she told them that Javonte had strangled her to the point of almost losing consciousness. The problem? Photographic evidence taken by law enforcement shortly after the incident shows bruising on her neck. Kaylee's lack of candor provides no assurance that the incident and behaviors are being properly managed. There is a lack of accountability within the home. Self-reflection and mature recognition of what occurred and how to move forward in a healthy manner is lacking. Additionally, Javonte's denial under oath that he committed the violent acts illustrates his failure to address the seriousness of his own actions.

I would not penalize Ashlea for the "general paucity in the record of positives that Ashlea is prepared to bring rather than the negatives she thinks Javonte has." When the "negatives" to which the district court refers are the continued acts of repeatedly and violently beating women, the central factors of stability offered by Ashlea are more than sufficient to show she is the superior caretaker. Instead of crediting Ashlea for years of employment as a medical tech, living with her fiancé in the same home for the past four years, and raising three other children in that home, the district court dismissed those factors. I would argue these factors display Ashlea's superior caretaking abilities over Javonte.

It is well established law that "domestic abuse is, in every respect, dramatically opposed to a child's best interests." *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997). It "discloses a serious character flaw in the batterer, and an equally serious flaw in parenting." *Id.*

In my opinion, the answer to the question of whether "Ashlea's lack of a history of domestic abuse [is] enough to make her a superior parent" is a resounding 'yes.' And because the answer is yes, I respectfully dissent.